Joseph VORACHEK, Georgetta Vorachek, Bernadine Mahon, Lynette O'Linn, State ex rel. Citizens State Bank of Lankin, Plaintiffs and Appellees,

v.

CITIZENS STATE BANK OF LANKIN, a North Dakota corporation, LaVerne Gaarder, personally and as Personal Representative of M.W. Vorachek Estate, Defendants and Appellants,

and

Roger Vorachek and W.J. Vorachek, Defendants and Appellees.

Civ. No. 890229.

Supreme Court of North Dakota.

Oct. 2, 1990.

Michael J. Williams (argued), Fargo, for plaintiff and appellee Joseph Vorachek.

Fleming, DuBois & Trenbeath, Cavalier, for plaintiffs and appellees Bernadine Mahon and Lynette O'Linn; argued by Neil W. Fleming.

Stenehjem, Foss & Moore, Bismarck, for defendant and appellant Citizens State Bank of Lankin; argued by Marilyn Foss.

LaVerne Gaarder, Edmore, pro se.

Hamilton, Juntunen & Cilz, Grand Forks, for defendant and appellee W.J. Vorachek; argued by R. Lee Hamilton.

GIERKE, Justice.

The Citizens State Bank of Lankin and LaVerne Gaarder appealed from a district court order granting the plaintiffs' request for an "interim court monitor" to observe and report on the operations of the Bank pending a final determination of the merits of this shareholder derivative action. We treat the appeal as a petition for exercise of our supervisory jurisdiction, and we deny the petition in part and grant the petition in part.

The factual background of this case is stated in *Vorachek v. Citizens State Bank of Lankin,* 421 N.W.2d 45 (N.D.1988) [*Vorachek I*] and will be repeated to the extent necessary to decide the issues raised in this appeal. The Bank is a family-owned banking corporation with its principal place of business in Lankin, North Dakota. The plaintiffs, Joseph Vorachek, Georgetta Vorachek, Bernadine Mahon, and Lynette O'Linn, are minority stockholders in the Bank. Roger Vorachek, W.J. Vorachek, and Gaarder, personally and as Personal Representative of the Estate of M.W. Vorachek, are majority stockholders, officers, directors, and employees of the Bank. The

plaintiffs brought this action alleging that the defendants paid themselves excessive salaries, bonuses, loan write-offs, and other job-related benefits and that they wasted and converted Bank assets for their private use. The plaintiffs sought damages, an accounting, a declaration of dividends, removal of directors, punitive damages, receivership, and dissolution of the Bank.

After the defendants repeatedly failed to comply with the plaintiffs' discovery requests, the trial court entered an order striking the defendants' answer, granting a default judgment against them on liability as a sanction for discovery abuse, and appointing Roger Reule as "Court Monitor." The court's order made Reule "Executive Vice President" of the Bank and appointed him to the Board of Directors. Reule was also given authority to hire employees, to make recommendations regarding disposition of Bank assets, to calculate the compensation paid to the defendants, to consult with the Bank regarding significant transactions, and to file a report with the court. The court's order also excluded Roger and W.J. Vorachek, the president and vice-president of the Bank, from the Bank and precluded the Bank from compensating them. LaVerne Gaarder was ordered to continue operating the Bank but her salary was reduced from $120,000 to $30,000 per year.

The default judgment and order appointing Reule as "Court Monitor" constituted the basis for the appeal in *Vorachek I.* While *Vorachek I* was pending and after Reule submitted his report to the district court, the court issued another order discharging Reule and appointing an accounting firm as "Court Monitor" with limited functions to observe and report Bank management activity. That order also raised LaVerne Gaarder's salary to $42,000 per year and, subject to certain limitations, returned authority to operate the Bank to its board of directors.

In *Vorachek I,* we concluded that, under the extremely unusual circumstances of the case involving the defendants' attorney's inherent conflict of interest, the court abused its discretion in entering a default judgment as a sanction for discovery

abuse, and we reversed the judgment. In discussing the court's authority to appoint a "Court Monitor" and restrict the defendants' operations of the Bank, we said:

> "The extraordinary remedies utilized by the trial court in this case were included in a judgment which entered default on the issue of liability against the defendants. These provisions were apparently intended by the court as interim relief in contemplation of dissolution of the corporation or a forced buy-out of the minority shareholders' interests. The record indicates that this relief was based entirely upon the entry of default on the issue of liability. We have, however, held that imposition of default was in error, and have thereby displaced the foundational basis for those remedies. Therefore, the extraordinary remedies provided in the judgment must also be reversed.[5]

> [5]. Because it is clear that the relief in this case was entirely ancillary to the trial court's entry of default on the issue of liability, we find it unnecessary to address whether appointment of a receiver or other injunctive relief would have been appropriate under Section 10–21–17, N.D.C.C., without the entry of default." *Vorachek I, supra,* 421 N.W.2d at 55.

Because of off-the-record, post-judgment occurrences which precluded a determination of the appropriate relief on appeal, we remanded to the district court for that determination, stating:

> "On remand, the trial court will be authorized, if deemed appropriate, to impose lesser sanctions for the discovery abuses which have occurred in this case." *Vorachek I, supra,* 421 N.W.2d at 54.

On remand the plaintiffs moved for interim relief pending a final determination of the case. Citing Sections 32–10–01, 10–19.1–115, and 10–19.1–116, N.D.C.C., the court noted its statutory authority to appoint a receiver *pendente lite* to preserve corporate assets but said that "the appointment of a court monitor whose only responsibility is to observe and report the actions of Bank management, plus the imposition of certain limitations on Bank management relating to compensation, constitute a far less extreme measure than the appointment of a receiver, and appear to be well

within what the legislature intended [in Section 10–19.1–116(1), N.D.C.C.] when it granted the Court authority to 'take other actions required to preserve the corporate assets.'" The court acknowledged that "the Bank had been reasonably well run by defendant LaVerne Gaarder, but that excessive and inappropriate compensations had been paid," and granted the following interim relief:

"1. An interim court monitor is hereby appointed, effective immediately. (If the previous monitor, the accounting firm of Olafson and Olson, is willing to serve as interim court monitor, that firm is hereby appointed. If not, then plaintiffs' counsel are directed to confer among themselves and with defendants' counsel to recommend to the Court a competent, impartial individual to serve in this capacity.)

"2. The interim court monitor shall obtain from the defendant Bank and its management at least monthly a report of all salaries, bonuses, expenses, expense accounts and allowances, retirement benefits, and any other thing or item of economic value in excess of $10.00 per month, paid to, on behalf of, or in favor of any of the shareholders, officers and directors of the Bank, or any of their family members, as well as all loans written off for any such shareholder, officer, director, or family member thereof.

"3. The interim court monitor shall be given timely notice of every meeting of the Board of Directors, and shall be permitted to attend any and all such meetings. The interim court monitor shall be provided with the copy of the minutes of every meeting of the Board of Directors on the first business day following any such meeting. The interim court monitor shall promptly forward to the Court and all counsel copies of all information obtained from the bank, along with any reports the monitor may deem appropriate. The interim court monitor shall report to the court and counsel any matter of concern regarding the Bank's operation, any instance of a suspected or possible violation of this order, or any instance of failure by any of the Bank's

directors, officers or employees to cooperate fully with the monitor. The directors, officers and employees of the Bank are hereby ordered to cooperate fully with the monitor and its agents in every respect. The interim court monitor shall submit a statement to the defendant bank at least monthly for all services rendered pursuant to this order, and the Bank shall promptly pay for all such services.

"4. LaVerne Gaarder shall continue to serve as a chief operating officer of the Bank, and shall receive a total compensation not to exceed $3,500.00 per month, plus actual expenses. Officers, directors and employees of the Bank may be reimbursed only for reasonable expenses actually and necessarily incurred in the course of their employment by the Bank, and only upon written voucher fully itemizing such expenses: automobile expenses, when properly incurred and vouchered, may be reimbursed at a rate not to exceed 25 cents per mile.

"5. All of the directors, officers, shareholders, employees of the defendant bank and their agents are hereby restrained and enjoined from taking any action which might jeopardize or impair the Bank's operations, safety or soundness, or the value of the Bank as a financial institution or as a corporation, or the value of the interest of any shareholder or shareholders of the Bank, pending further order of the court."

Gaarder and the Bank have appealed.

■ We initially discuss the appealability of the trial court's order. Our framework for analyzing this court's jurisdiction in cases where there is an appeal and there are unadjudicated claims remaining to be resolved by the trial court is now settled. First, the order appealed from must satisfy one of the criteria set forth in Section 28–27–02, N.D.C.C. *Jerry Harmon Motors, Inc. v. First National Bank & Trust Co.,* 436 N.W.2d 240 (N.D.1989). Second, if the order does meet one of the statutory criteria, then Rule 54(b), N.D.R.Civ.P., must be complied with. *Id.* In this case there is no

Rule 54(b) certification. We therefore cannot consider this matter as an appeal.

Although we cannot consider this matter as an appeal because there is no Rule 54(b), N.D.R.Civ.P., certification, we believe the issues in this case about the trial court's authority to grant this interim relief affects fundamental interests of the litigants. We will consider the appeal as a request to exercise our supervisory jurisdiction and, exercising our discretion, we will consider the issues in this case on the merits. *Thompson v. Goetz*, 455 N.W.2d 580 (N.D.1990).

We therefore examine whether the court exceeded its authority in ordering this interim relief. The appellants argue that ch. 6–07, N.D.C.C., provides the exclusive authority for the appointment of a "receiver" for a state chartered bank under North Dakota law. Alternatively, they contend that a "receiver" was not authorized under chapters 10–19.1, 32–06, or 32–10, N.D.C.C., because the appointment was not supported by competent, admissible evidence. They assert that, in granting this interim relief, the court erred in relying on Reule's unsigned report. The appellants' characterization of the interim court monitor as a "receiver" misconstrues the scope of this order.

A receiver is "one who 'take[s] possession of and preserves, pendente lite, and for the benefit of the party ultimately entitled to it, the fund or property in litigation.'" *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir.1989), *citing Gulf Refining Co. of Louisiana et al. v. Vincent Oil Co.*, 185 F. 87, 89–90 (5th Cir.1911). *See* 65 Am.Jur.2d, *Receivers*, § 2 (1972).

In this case, this "interim court monitor" did not take possession of any fund or property which is the subject of this litigation. The first two paragraphs of the earlier-quoted order designated an "interim court monitor" to act as a conduit for obtaining monthly reports from the Bank about salaries, bonuses, expenditures, or loan write-offs in favor of any of the shareholders, officers, or directors of the Bank. The third paragraph of the earlier-quoted order essentially authorized the "interim court monitor" to attend meetings of the Board of Directors and to receive minutes of those meetings as well as to forward information and reports received from the Bank to the court and all counsel. This "interim court monitor" was, in effect, a "watchdog" to ensure that information about the operation of the Bank was made available to all the parties. This monitor's functions are significantly different than those given the original monitor after entry of default judgment. For example, this monitor was not designated as "Executive Vice President" of the Bank, was not appointed to the Board of Directors, and was not authorized to hire employees. The trial court specifically recognized that fact when it stated that this interim court monitor's duties constituted a "far less extreme measure than the appointment of a receiver." We conclude that the interim court monitor's functions, as outlined in the first three paragraphs of the court's order, are not those of a receiver.

Given the history of discovery abuses by the Bank which were documented in *Vorachek I* and our admonition in that case about the imposition of lesser sanctions on remand for those discovery abuses, we believe this record amply supports that part of the order as a "just" discovery sanction for failure to comply with an order to provide or permit discovery under Rule 37(b)(2), N.D.R.Civ.P. Although the trial court's decision did not cite Rule 37, N.D.R.Civ.P., as authority for this order, the plaintiffs' motion for relief specifically relied upon Rule 37. We have repeatedly said that we will not reverse a trial court's decision merely because the court's reasoning in arriving at its decision was incorrect if the results are the same under the applicable reasoning. *E.g., Radspinner v. Charlesworth*, 369 N.W.2d 109 (N.D.1985). The Bank's argument that it "can provide the same information to the parties directly" and that the discovery rules "provide an orderly method for parties to request and obtain relevant information from each other" ignores the lack of cooperation in the discovery process and the history of

discovery abuses in this case. We conclude that, under the circumstances of this case, the trial court did not abuse its discretion in giving the "interim court monitor" the functions described in the first three paragraphs of its order as a discovery sanction.[1]

Paragraph four of the court's interim order fixes LaVerne Gaarder's salary at $3,500 per month and permits reimbursement of the officers, directors, and employees of the Bank only for reasonable expenses actually and necessarily incurred in the course of their employment by the Bank. Paragraph five restrains and enjoins the directors, officers, shareholders, or employees of the Bank from taking any action to jeopardize or impair the value of the Bank, pending further order of the court. The effect of those two paragraphs is to grant a preliminary injunction.

■ The decision to grant or deny a preliminary injunction is within the discretion of the trial court, and its determination will not be disturbed on appeal unless it abused its discretion. *F-M Asphalt, Inc. v. North Dakota State Highway Department,* 384 N.W.2d 663 (N.D.1986). A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Id.*

■ Generally, "a preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden of persuasion." 11 C. Wright & A. Miller, Federal Practice & Procedure, § 2948, at 428 (1973). A trial court's discretion to grant or deny a preliminary injunction is based upon the following factors: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest. *F-M Asphalt, Inc., supra; see Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). The court's discretion is exercised in light of preserving the status quo and protecting the rights of the applicant pending a deter-

mination on the merits. *Gillies v. Radke,* 78 N.D. 974, 54 N.W.2d 155 (1952).

■ The preservation of the status quo recognizes that the most important prerequisite for the issuance of a preliminary injunction is a demonstration that, if the preliminary injunction is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. 11 C. Wright & A. Miller, *supra,* § 2948 at 431. Thus, a preliminary injunction usually will be denied if the applicant has an adequate alternative remedy in the form of money damages or other relief. *Id.* at 434.

In *Viestenz v. Arthur Twp.,* 78 N.D. 1029, 54 N.W.2d 572, 578 (1952), this court recognized that aspect of irreparable injury:

" 'An injury is irreparable when it cannot be adequately compensated in damages, and it is not necessary that the pecuniary damage be shown to be great. * * * Acts which result in a serious change of, or are destructive to, the property affected either physically or in the character in which it has been held or enjoyed, * * * do an irreparable injury * * *.' 43 C.J.S., Injunctions, § 23, pp. 446, 447, 448."

■ In this case, we do not believe that this record demonstrates that the plaintiffs are likely to suffer irreparable harm before a decision on the merits can be rendered. The district court recognized as much when it acknowledged that Reule's report stated "that the Bank had been reasonably well run by defendant LaVerne Gaarder." The plaintiffs sought alternative relief, but this case is essentially about the Bank paying excessive salaries and expenditures while failing to declare dividends. Although the court noted that Reule's report indicated that "excessive and inappropriate compensation had been paid [by the Bank]," a determination that goes to the probability of success on the merits, there is nothing in this record to indicate that money damages

---

1. Because of our resolution of this issue, we need not decide whether chapter 6–07, N.D.C.C., provides the exclusive authority for appoint-
ment of a receiver for a state-chartered bank under North Dakota law.

would be inadequate, that the defendants would be unable to satisfy a money judgment in the event that the plaintiffs prevail on the merits, or that the Bank is now in any danger as a financial institution. The absence of any such evidence indicates that the plaintiffs' injuries, if any, can be adequately compensated by an award of damages and that the plaintiffs are not likely to suffer irreparable harm before a decision on the merits can be rendered.

In the absence of any evidence of irreparable harm, we conclude that the district court abused its discretion in limiting expenses of the officers, directors and employees of the Bank and the compensation of Gaarder as well as restraining the directors, officers, shareholders and employees of the Bank from taking any action to impair the value of the Bank.[2] We therefore exercise our supervisory jurisdiction and direct the district court to vacate paragraphs four and five of the interim order.[3]

The defendants also argue that the trial judge has demonstrated a lack of impartiality, and they request that we appoint a different judge to hear this case. Although we decline to order a different judge to hear this case, we do not preclude the court from considering such a request on remand.

We deny the application for a supervisory writ as to paragraphs one, two, and three of the interim order. We grant the supervisory writ as to paragraphs four and five, and we direct the trial court to vacate those two paragraphs of the order.

MESCHKE, Acting C.J., VANDE WALLE and LEVINE, JJ., and VERNON R. PEDERSON,* Surrogate Judge, concur.

---

**2.** We recognize that the obligations imposed by paragraph five of the order are consonant with the fiduciary duty of an officer or director of a corporation to the corporation and its stockholders. *See* 3 Fletcher, Cyclopedia Corporations, § 838 (1986). Although we direct the district court to vacate paragraph five of the order, nothing in this opinion should be construed as abrogating the fiduciary duty of the officers or directors while this action is pending. Furthermore, we express no opinion on the possible merits of any claim in this action.

**3.** Because of our resolution of this issue, we express no opinion on the defendants' related argument that the preliminary injunction impermissibly extended beyond the six-month limit in Section 32-06-03, N.D.C.C., or that the court did not order a bond as required by Section 32-06-05, N.D.C.C.

\* VERNON R. PEDERSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.