2001 ND 118

**L.A. BRAUNAGEL, Plaintiff and Appellant**

v.

**CITY OF DEVILS LAKE, North Dakota, a Municipal Corporation, Respondent and Appellee.**

**No. 20000342.**

Supreme Court of North Dakota.

July 10, 2001.

Peter K. Halbach, Haugland, Halbach and Halbach, Devils Lake, for plaintiff and appellant.

Jay H. Fiedler (argued) and Ronald F. Fischer (appeared), Pearson Christensen, Grand Forks, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]  L.A. Braunagel appealed from a summary judgment dismissing his action against the City of Devils Lake ("the City") seeking a declaratory judgment and injunction directing the City to annex certain property or, alternatively, seeking damages for inverse condemnation.  We affirm.

I

[¶ 2]  Braunagel owns a parcel of property adjacent to the City.  The property has at all times been zoned for agricultural use.  The entire 1,700 foot southern edge of the property is bordered by the rail line of the Burlington Northern Santa Fe Railroad.  Part of the northern edge is bordered by single-family housing.  The western edge and remaining part of the northern edge are bordered by property zoned R–3, Medium Density Residential.  To the east is the local Elks club.

[¶ 3]  In 1994 the City adopted a Comprehensive Plan to guide its future development.  *See* N.D.C.C. § 40–47–03.  In the plan, Braunagel's property was designated for Medium High Density Residential Development.

[¶ 4]  On June 9, 1997, Braunagel petitioned the City to annex his property.  He requested the zoning remain agricultural until the land was developed, at which time it would be zoned R–4, High Density Multi Family Residential.  The Devils Lake Planning Commission held a public hearing on the petition on June 26, 1997.  The Planning Commission received petitions, signed by nearly all of the residents in the single-family district adjacent to Braunagel's property, protesting the proposed annexation.  At the hearing, numerous area residents expressed concerns about traffic, safety, and land valuations if the proposed annexation were approved.  Residents were particularly concerned that, because most traffic to Braunagel's proposed development would travel through one street in the residential development to the north, allowing large apartment buildings would greatly increase traffic flow through the

neighborhood. They also expressed concerns about pedestrian safety because there are no sidewalks in the area and pedestrians, including children, walk on the streets.

[¶ 5] The Planning Commission recommended Braunagel's petition be rejected. After a public hearing, during which area residents again voiced numerous concerns, the City Commission rejected the petition.

[¶ 6] Braunagel filed a second petition for annexation, this time requesting zoning as R–3, Medium Density Multi–Family Residential, when the property was developed. After a hearing, the Planning Commission voted to recommend approval of the petition for annexation, but with a portion of the parcel ultimately to be zoned R–3 and the remainder to be zoned R–2, Low Density Residential. On August 18, 1997, the City Commission voted to reject Braunagel's second annexation petition.

[¶ 7] On September 17, 1997, Braunagel commenced this action against the City, seeking (1) a judgment declaring the City Commission had acted arbitrarily, capriciously, and unreasonably in rejecting the second petition; (2) a mandatory injunction ordering the City to annex his property as R–3 or R–4; and (3) alternatively, damages for inverse condemnation. The trial court granted the City's motion for summary judgment, and judgment dismissing Braunagel's claims was entered on November 7, 2000.

## II

[¶ 8] Braunagel argues the City's rejection of the annexation petition was arbitrary, capricious, and unreasonable, and therefore the trial court erred in dismissing his claim for declaratory and injunctive relief. The City argues that declaratory and injunctive relief are unavailable to challenge a municipality's decision to reject a petition for annexation.

[¶ 9] Braunagel contends the procedure he employed in this case is supported by *Pulkrabek v. Morton County,* 389 N.W.2d 609, 611 (N.D.1986), in which this Court noted: "An appropriate procedure to challenge the validity of a zoning ordinance is through a separate declaratory-judgment action." Braunagel's argument, however, fails to recognize the distinction between a challenge to the validity of a zoning ordinance and a challenge to the "correctness and propriety" of the City's legislative decision whether to annex property. *See id.* (citing *Olson v. Cass County,* 253 N.W.2d 179 (N.D.1977)).

[¶ 10] This Court has declared that the determination whether to annex land to a municipality is a legislative act:

In general, the method and desirability of extending corporate limits are legislative questions. They relate to the public interests, and whether they will be subserved by the creation of a municipality or the extension of its limits, and, in so far as the expediency or wisdom of the annexation in question was involved, the Legislature delegated the power to determine such questions, under certain limitations, to the city council of Grand Forks, but those questions are at most only indirectly involved in the present proceeding.

The question as to whether the power conferred upon the city council has been legally exercised, whether the statute under which it acts is constitutional, what the effect of any irregularities or omissions in pursuing the method prescribed by the statute may be, and other similar questions, are for judicial determination. The creation or extension is a legislative or political function, but courts may determine what are the corporate limits already established, whether what is claimed to be a corporation is

a corporation, and whether the legislative authority has been exceeded by the city in its attempts to extend its boundaries.... In the case at bar, the main questions, and those only which we find it necessary to decide, relate to the validity of the proceedings, and not to the policy of annexation....

*Red River Valley Brick Co. v. City of Grand Forks,* 27 N.D. 8, 27, 145 N.W. 725, 727 (1914); *see also City of Carrington v. Foster County,* 166 N.W.2d 377, 382–83 (N.D.1969).

[¶ 11] In *Glaspell v. City of Jamestown,* 11 N.D. 86, 89–90, 88 N.W. 1023, 1025 (1902), the Court explained the far-reaching effects of a municipality's legislative decision whether to annex property:

[The determination to annex or exclude property] involves the reaching of a conclusion from the facts found as to the policy of restricting the corporate limits of the city,—not only the policy for the present, but for the future. It determines the limits of the city; the jurisdictional limits of its courts, and taxation powers; the effect upon its schools and people; and, in short, determines the same identical questions of public policy involved always in the exercise of legislative duties or powers. When exercised as to the organization of cities, it determines whether the charter shall be amended in the matter of boundaries; it determines whether the boundaries of the city shall be changed,—something that can be done in no other way, under present laws, than by the passage of an ordinance. This seems to us to involve the exercise of what is clearly legislative discretion.

*See also City of Carrington,* 166 N.W.2d at 380.

■ [¶ 12] In accordance with these prior pronouncements, we have held that declaratory and injunctive relief, while available to challenge a municipality's failure to comply with statutory procedures for annexation or zoning, may not be used to challenge the wisdom, propriety, or correctness of the decision:

"An injunction cannot be granted ... [t]o prevent a legislative act by a municipal corporation." NDCC 32–05–05(7). In *Red River Valley Brick Co. v. Grand Forks,* 27 N.D. 8, 145 N.W. 725 (1914), this court upheld injunctive relief against a municipality because it failed to comply with the statutory requirements for annexing property. We said that generally a municipality's decision to extend its corporate limits is a legislative act that may not be enjoined, but that injunctive relief is appropriate if the municipality fails to follow the statutory procedures for annexing property. We distinguished between a municipality's illegal exercise of its annexation power and the wisdom of the municipality's decision to annex land. We said the former was a judicial function that could be enjoined, while the latter was a legislative act that could not be enjoined. In a similar context, we have also said that a declaratory judgment action may be an appropriate method to challenge the validity of a zoning ordinance. *Declaratory and injunctive relief are appropriate if a municipality fails to comply with the statutory procedures for annexation and zoning, but may not be used to test the wisdom of an annexation or zoning decision.*

*Frey v. City of Jamestown,* 548 N.W.2d 784, 787 (N.D.1996) (citations omitted) (emphasis added).

■ [¶ 13] In this case, Braunagel is not alleging the City failed to comply with the statutory procedures for annexation. Rather, he is challenging the wisdom and propriety of the City's decision to reject his petition. Braunagel argues the City

should have given greater credence to the Comprehensive Plan, paid more heed to the opinions of its City Engineer and City Attorney, and followed the recommendation of the Planning Commission. Braunagel argues the City gave too much credence to the complaints and concerns of area residents in reaching its decision. All of these factors go to the wisdom, propriety, and correctness of the decision, and cannot be challenged by seeking declaratory or injunctive relief.

[¶ 14] We conclude the trial court did not err in dismissing Braunagel's claim for declaratory and injunctive relief.

### III

[¶ 15] Braunagel argues the City has "taken" his property without compensation, and the trial court therefore erred in dismissing his inverse condemnation claim.

[¶ 16] Article I, § 16, N.D. Const., provides that private property may not be taken for a public use without just compensation. Under this provision, the City, acting through its police powers, has broad authority to enact land-use regulations without compensating the landowner for the restrictions placed upon use of the property. *Grand Forks–Traill Water Users, Inc. v. Hjelle*, 413 N.W.2d 344, 346 (N.D.1987); *Rippley v. City of Lincoln*, 330 N.W.2d 505, 507 (N.D.1983); *Kraft v. Malone*, 313 N.W.2d 758, 761 (N.D.1981), *overruled on other grounds by Shark v. Thompson*, 373 N.W.2d 859 (N.D.1985); *Eck v. City of Bismarck*, 283 N.W.2d 193, 197 (N.D.1979). A zoning ordinance does not constitute a taking of property for public use merely because it diminishes the value of the regulated property or disallows the best and highest use of the property. *Grand Forks–Traill*, at 346; *Rippley*, at 507; *Eck*, at 197. Governmental regulation constitutes a taking for public use only when it deprives the owner of

all or substantially all reasonable uses of the property. *Grand Forks–Traill*, at 346; *Rippley*, at 507; *Kraft*, at 761. The determination whether there has been a taking of private property for public use is a question of law which is fully reviewable by this Court on appeal. *Minch v. City of Fargo*, 332 N.W.2d 71, 73 (N.D.1983); *Rippley*, at 507; *Kraft*, at 761.

[¶ 17] The trial court offered a cogent explanation of its conclusion that there was no taking of Braunagel's property:

Here, the owner argues he has been deprived of the primary and most reasonable use of the property because he cannot sell this property for single-family residences except for possibly two lots. The owner further alleges he has attempted to sell all of the lots adjacent to the railroad without success. However, primary and most reasonable use is not the standard for a "taking." The property is agricultural land and can be used for this purpose. The adjacent railroad embankment was established long before the City developed a Comprehensive Plan or annexed other property within the area. The proximity of the railroad appears to adversely affect development of this property.

Considering the Plaintiff's affidavit and the undisputed facts, the Court concludes the Plaintiff's property has some limitations for development because of a unique characteristic (railroad) next to the property. However, the City Commission decision to reject the second Petition did not take away substantially all of the value of his property. Rather, the City's decision merely limited his maximum development potential (best use) which does not constitute a "taking" under our law.

[¶ 18] We agree with the trial court's analysis. Braunagel has failed to demonstrate the City's refusal to annex his property and zone it for apartment buildings deprived him of all or substantially all reasonable uses of the land. This land has historically been agricultural land. Although its value for future residential development is hampered by its proximity to the railroad, that adverse consequence was present long before, and was not caused by, the City's failure to annex the property.

[¶ 19] Braunagel's claim is essentially that the *only* reasonable use of the property is for multi-unit apartment buildings. While that may be, in his opinion, the best and most valuable use of the property, it is not the only reasonable use. Although other uses of the property may not be as profitable for Braunagel, a mere reduction in the market value of property cannot serve as the basis for an inverse condemnation claim. *See Buegel v. City of Grand Forks*, 475 N.W.2d 133, 134–35 (N.D.1991); *Eck*, 283 N.W.2d at 197–98; *see also Palazzolo v. Rhode Island*, —— U.S. ——, 121 S.Ct. 2448, 150 L.Ed.2d 592, (2001) (a land-use regulation which falls short of eliminating all economically beneficial use may constitute a taking, depending upon a complex of factors) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

[¶ 20] We again note Braunagel sought annexation, not simply rezoning, of his property. Annexation raises numerous issues beyond mere use of the property, including provision of services, taxation, and the jurisdictional boundaries of the City. *See City of Carrington*, 166 N.W.2d at 380; *Glaspell*, 88 N.W. at 1025. The City has exercised zoning authority over Braunagel's property through extraterritorial zoning under N.D.C.C. § 40–47–01.1.

Thus, Braunagel could have sought rezoning of his property without annexation. Under these circumstances, where Braunagel could have sought a less restrictive procedure for changing the permitted use of his property, the City's denial of his petition for annexation cannot constitute a taking for public use.

[¶ 21] We conclude the trial court did not err in dismissing Braunagel's inverse condemnation claim.

[¶ 22] The judgment is affirmed.

[¶ 23] SANDSTROM, NEUMANN, MARING and KAPSNER, JJ., concur.