2016 ND 30

# BLACK GOLD OILFIELD SERVICES, LLC, Plaintiff and Appellant

v.

## The CITY OF WILLISTON, and the Williston City Commission, Defendants and Appellees.

### No. 20150112.

Supreme Court of North Dakota.

Feb. 18, 2016.

516

Lawrence E. King, Bismarck, N.D., for plaintiff and appellant.

Scott K. Porsborg (argued) and Preston J. Wise (appeared), Bismarck, N.D., for defendants and appellees.

McEVERS, Justice.

[¶ 1] Black Gold OilField Services, LLC, appeals from an order vacating a temporary restraining order and denying its request to preliminarily enjoin the City of Williston and the Williston City Commission from enforcing a decision to close Black Gold's temporary workforce housing facility during the pendency of Black Gold's lawsuit against Williston and the City Commission. We treat Black Gold's appeal as a petition for the exercise of our supervisory jurisdiction. We deny the petition, concluding the district court did not abuse its discretion in denying Black Gold's request for a preliminary injunction.

I

[¶ 2] Black Gold owns the Black Gold Williston Lodge, a temporary workforce housing facility commonly known as a man camp, which has 322 rooms and 400 beds primarily for workers in the Bakken oilfield and was initially located on land outside the Williston city limits in Williams County. Black Gold has operated the Lodge since March 2011, initially operating under a temporary use permit issued by Williams County. In February 2013, Williston annexed about 4,888 acres of unincorporated land in Williams County, including the land for the Lodge. In September 2013, Williston adopted a resolution to extend permits issued by Williston County for temporary workforce housing facilities and to require those facilities, including the Lodge, to comply with Williston's zoning, building, and fire codes.

[¶ 3] In December 2013, Williston notified Black Gold that it must install a fire protection sprinkler system in the Lodge, and Black Gold requested an extension for up to 180 days. In January 2014, Williston extended the time for Black Gold to install a sprinkler system in the Lodge until December 31, 2014, and notified Black Gold of the extension on January 29, 2014. In June 2014, Williston again notified Black Gold the Lodge must have an operational sprinkler system in place by December 31, 2014.

[¶ 4] According to Williston Fire Chief Jason Catrambone, Black Gold contacted the Williston Fire Department in November 2014, to discuss the installation of a sprinkler system in the Lodge. On December 15, 2014, Black Gold applied for a building permit to construct water tanks for the sprinkler system, and Williston issued that permit on December 19, 2014. According to Dave Kennedy, Black Gold's Vice President of Operations, he met with Woody Ball, Williston's Chief Fire Inspector, multiple times during the course of the installation of the sprinkler system in the Lodge, including November 17, 2014, and twice between January 6, 2015, and January 13, 2015. According to Kennedy, Ball requested an update on the progress of the installation on January 6, 2015, and was advised the system would be finished on or before February 15, 2015. Ball informed Kennedy on January 8, 2015, that the agenda for a January 13, 2015 Williston City Commission meeting had not been published and that Fire Chief Catrambone was not aware if temporary workforce housing facilities were on the agenda.

[¶ 5] At the January 13, 2015 meeting, the City Commission considered issues about fire sprinkler systems at temporary workforce housing facilities. The minutes of that meeting state:

Tate Cymbaluk, City Commissioner presented the following:

D. Fire, Police, and Ambulance Commissioner

(1) Fire Inspections—workforce housing man camps—required sprinkler systems for Aries, Black Gold and ATCO; non-compliance of Black Gold and ATCO[.] This item is regarding the workforce housing North of town; Aries, Black Gold and Atco. When the property was annexed in February 2013, the goal was they would be allowed to operate and have 16 months to get in compliance with City Codes. Atco and Black Gold have not complied. Aries has followed through with bringing their workforce housing up to code and are in compliance. Commissioner Brostuen stated he understood the safety concerns but wondered if this is enough time to remedy the situation. Commissioner Cymbaluk stated he does not feel they should be given any more time to become compliant; they were given adequate notice to become compliant. Commissioner Piesik stated she feels two weeks is not enough time for the people living in these man camps. Commissioner Piesik also asked if there were any applicable fines put in place. Mayor Klug stated he did not think the City of Williston has fines big enough for this situation. Commissioner Cymbaluk feels this is not the commission's problem; it is the man camps as they failed to meet the rules and regulations. Discussion was had regarding giving them until March 1, 2015 to vacate the premises; to completely remove the facilities. Mayor Klug asked about an option to not allow them to do business until they have come into compliance. Commissioner Cymbaluk does not feel this is adequate. Commissioner Bekkedahl asked if staff had been out to the sites within the 16 month period to check on progress. Commissioner Cymbaluk stated they received numerous letters regarding being in compliance by the end of 2014. Donald Kress, Planning and Zoning, stated City staff was out inspecting the crew camps after the annexation; the camps were told at the time of inspection they had to be in compli-

ance with the sprinkler system, they received several letters stating the conditions; paying fees, being in compliance with all city ordinances and having a sprinkler system in place and operational by 12/31/2014. It was clarified that the previous fire chief spoke in person to the camps. Commissioner Bekkedahl asked if the offending parties were given notice that this item was going to be on the agenda for this commission meeting. The answer was probably not. Peter Aberle with Aries Building Systems stated his company has gone through the expense of being compliant and all of the camps should have to do the same. Terry Metsler also stated getting a second chance for these two camps should not be an option. It was stated that should an accident happen when they are out of compliance, the City may hold some of the liability. Commissioner Piesik agrees a date should be set but that the businesses that have people at the camps need time to vacate. Commissioner Piesik suggested February 15, 2015 as the vacate date. Commissioner Cymbaluk asked if a dollar amount for a fine can be set for everyday they are not out by the date set as the meeting tonight. Attorney Furuseth stated he was not sure. Mayor Klug stated a date needed to be set and then on that date the buildings need to be plaquered and that is it it is vacated. Commissioner Cymbaluk stated if the motion passes they would take the necessary actions with the City Attorney, the PD and the Building Dept. to follow proper protocol.

AMMENDED [sic] MOTION BY CYMBALUK, SECONDED BY BROS-TUEN, for ACTO and Black Gold or their subsidiaries vacate said premises with the proper reclamation no later than 2/15/2015

AYE: Brostuen, Bekkedahl, Piesik, Cymbaluk, Klug

NAY: NONE

[¶ 6] Black Gold requested reconsideration, and Williston stayed its decision and placed Black Gold's request on the City Commission's agenda for its February 24, 2015 meeting. According to Black Gold, its contractor completed installation of the sprinkler system for the Lodge on February 12, 2015, and the facility passed an inspection by the fire inspector on February 14, 2015. The parties agree that Black Gold appeared before the City Commission on February 24, 2015, and the Commission voted 3 to 2 not to reconsider its prior decision. Williston ultimately informed Black Gold that all the tenants would be required to vacate the facility by May 1, 2015, and that the structure would be required to be removed by September 1, 2015.

[¶ 7] In a complaint dated February 25, 2015, Black Gold sued Williston and the City Commission for a declaratory judgment and to prohibit enforcement of the decision. Black Gold alleged Commissioner Cymbaluk was a real estate agent and property manager in Williston and had a financial interest in closing Black Gold's housing facility. Black Gold alleged that Williston's decision violated Black Gold's state and federal constitutional rights to due process because the decision was arbitrary, capricious, and unreasonable; that Black Gold had insufficient time and opportunity to comply with fire and building codes after the annexation; that Black Gold was not provided notice and an opportunity to appear at the January 13, 2015 City Commission meet-

ing; and that there was no basis for the decision not to extend the special use permit after the sprinklers were installed. Black Gold also alleged the City Commission lacked jurisdiction because the Williston building officer has exclusive jurisdiction under Williston's zoning ordinances to enforce Williston's building and fire codes after appropriate notice and opportunity to correct violations. Black Gold's complaint sought declaratory and injunctive relief and a writ of prohibition to prevent Williston from implementing its decision.

[¶ 8] Black Gold immediately sought a temporary restraining order and a preliminary injunction to prevent Williston from closing the Lodge while the lawsuit was pending. The district court initially issued a temporary restraining order, concluding that "[b]ased on the information provided, it appears Black Gold may be entitled to the relief demanded" and that "[i]n balancing the relative interests, it is more equitable" to enter a temporary restraining order. After Williston responded, the court vacated the temporary restraining order and denied Black Gold's request to preliminarily enjoin Williston's decision while the lawsuit was pending. The court explained:

Black Gold was afforded over one year to comply with the City's requirement to install a fire sprinkler system and meet all other applicable City requirements. Black Gold failed to comply with the City's requirement to install a fire sprinkler system on or before December 31, 2014.

At the January 13, 2015, regular meeting for the Board of City Commissioners, the City Commissioners moved to not extend Black Gold's permit for failure to comply with City ordinances and policies, specifically not installing a fire sprinkler system on or before December 31, 2014. Black Gold was afforded the opportunity to present their

arguments as to why their permit for temporary, workforce housing should be extended during a reconsideration hearing which occurred at the regular meeting for the Board of City Commissioners for the City of Williston on February 24, 2015. After hearing Black Gold's arguments, the City Commissioners chose to take no action on the matter which affirmed their earlier decision not to grant Black Gold's permit extension.

As a result of Black Gold's failure to comply with the applicable City ordinances and policies the City refused to grant an extension of Black Gold's temporary, workforce housing permit.

. . . .

The City acted within the authority granted to it under Section 40–47–01, N.D.C.C., and in accordance with the applicable City ordinances and policies when deciding not to extend Black Gold's permit.

Black Gold appealed, and the district court stayed its order pending appeal.

## II

[¶ 9] We initially consider the appealability of the district court's order denying Black Gold's request for a preliminary injunction. Our framework for analyzing this Court's jurisdiction in appeals from cases where there are unadjudicated matters remaining to be resolved by the district court is well-established. First, the order appealed from must meet one of the statutory criteria for appealability under N.D.C.C. § 28–27–02. *Gast Constr. Co. v. Brighton P'ship*, 422 N.W.2d 389, 390 (N.D.1988). If the order does not meet one of the statutory criteria for appealability, our inquiry need go no further and the appeal must be dismissed. *Id.* If the order is appealable, N.D.R.Civ.P. 54(b) must be complied with. *Gast Constr.*, at 390. Gener-

ally, an order is not appealable without a Rule 54(b) certification. *Gast Constr.*, at 390.

[¶ 10] An order vacating or dissolving a temporary restraining order after notice and a hearing is an appealable order under N.D.C.C. § 28–27–02(3) and (7). *Devine v. Fitzpatrick*, 258 N.W.2d 247, 248 (N.D.1977). Here, however, there is no N.D.R.Civ.P. 54(b) order. Although we cannot consider this matter as an appeal because there is no Rule 54(b) certification, we conclude the issues in this case about Black Gold's request for interim relief affect fundamental interests of the litigants. *See, e.g., Vorachek v. Citizens State Bank,* 461 N.W.2d 580, 584 (N.D. 1990). We will consider Black Gold's appeal as a request to exercise our supervisory jurisdiction, and we will consider the issues raised by Black Gold on the merits.

### III

[¶ 11] Black Gold's argument is postured in the context of the denial of a preliminary injunction to prohibit Williston from enforcing its decision not to extend a special use permit for Black Gold to operate its temporary workforce housing facility.

[¶ 12] "Generally, 'a preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Vorachek,* 461 N.W.2d at 585 (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure,* § 2948, at 428 (1973)). A district court's discretion to grant or deny a preliminary injunction is based on the following factors: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest. *Eberts v. Billings Cty. Bd. of Comm'rs,* 2005 ND 85, ¶ 8, 695 N.W.2d

691; *Nodak Mut. Ins. Co. v. Ward County Farm Bureau,* 2004 ND 60, ¶ 24, 676 N.W.2d 752; *Vorachek,* at 585. The decision to grant or deny a preliminary injunction is within a district court's discretion, and its determination will not be disturbed absent an abuse of discretion. *Eberts,* at ¶ 8; *Nodak Mut.,* at ¶ 24; *Vorachek,* at 585. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Eberts,* at ¶ 8.

### A

[¶ 13] Black Gold initially argues it has a substantial probability of succeeding on the merits of its lawsuit, because Williston's decision is arbitrary, capricious, and unreasonable. Black Gold claims Williston had no rational reason to order the housing facility closed on February 24, 2015, because Black Gold had completed installation of the fire protection sprinkler system in compliance with applicable codes on February 15, 2014, and, at most, there was only a short delay in completing installation of the sprinkler system. Williston responds Black Gold is not likely to prevail on the merits on this issue because Williston's legislative decision is not arbitrary, capricious, or unreasonable.

[¶ 14] "An injunction cannot be granted ... [t]o prevent a legislative act by a municipal corporation." N.D.C.C. § 32–05–05(7). In *Medical Arts Clinic, P.C. v. Franciscan Initiatives, Inc.,* 531 N.W.2d 289, 294–96 (N.D.1995), this Court extensively discussed the propriety of injunctive relief against public entities and prefaced our discussion by recognizing a fundamental principle that "to be entitled to injunctive relief, generally, a party must show that no adequate remedy at law exists and

that irreparable injury will result if relief is not granted." We explained:

> We have upheld injunctive remedies against public officials in some circumstances. *Viestenz [v. Arthur Twp.*, 78 N.D. 1029, 54 N.W.2d 572 (1952) ]; *Rynestad [v. Clemetson*, 133 N.W.2d 559 (N.D.1965) ]; *Barr [v. Barnes Cty. Bd. of Comm'rs*, 194 N.W.2d 744 (N.D.1972); *State ex rel.] Linde [v. Packard*, 32 N.D. 301, 155 N.W. 666 (1915); *State ex rel.] Ladd [v. District Court*, 17 N.D. 285, 115 N.W. 675 (1908) ]. In our recent decisions, however, we have explained the interrelationship of the requirement of an adequate legal remedy with the doctrine of exhaustion of remedies and clarified that the circumstances justifying an injunctive remedy against public officials are narrowly limited. *Tooley [v. Alm*, 515 N.W.2d 137 (N.D.1994); *Transportation Div. of Fargo Chamber of Commerce v.] Sandstrom*, [337 N.W.2d 160 (N.D.1983) ]; *Shark Brothers, [Inc. v. Cass Cty.*, 256 N.W.2d 701 (N.D.1977) ]; *Olson [v. Cass Cty.*, 253 N.W.2d 179 (N.D.1977) ].
>
> . . . .
>
> In *Olson, supra*, the plaintiffs did not pursue their statutory right to appeal from a Board of County Commissioners' decision to install a drainage culvert, but, instead, sued the County to enjoin the proposed installation of the culvert. We held that the plaintiffs were barred from seeking injunctive relief, because their statutory right to appeal, not a collateral attack for injunctive relief, provided an adequate judicial remedy for reviewing the Board's decision.
>
> We distinguished several earlier drainage cases in which we had upheld injunctive relief against public officials, because there was no adequate remedy other than injunctive relief to compel a governmental entity to comply with drainage statutes. *Barr, supra; Rynestad, supra; Viestenz, supra*. In each of those cases, the factors necessitating injunctive relief replicate the requirements for a writ of mandamus under N.D.C.C. §§ 32–34–01 and 32–34–02. . . .
>
> In *Olson, supra*, we also distinguished *Ladd, supra*, a case in which we held that, if there is no adequate legal remedy and a threat of irreparable harm, injunctive relief is appropriate to determine whether a public official's acts are in excess of, or without, authority. The circumstances supporting injunctive relief in *Ladd* parallel the criteria for a writ of prohibition, which "arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction," and "there is not a plain, speedy, and adequate remedy in the ordinary course of law." N.D.C.C. §§ 32–35–01, 32–35–02. *See also Linde, supra* (original writ of prohibition to restrain Tax Commissioner from exceeding authority).
>
> Our decisions illustrate that exhaustion of remedies is a fundamental requirement in administrative proceedings. *Tooley, supra; Sandstrom, supra; Shark Brothers, supra; Olson, supra*. Implicit in those decisions is the principle that the doctrine of separation of powers requires those who seek judicial review of administrative matters to first exhaust their administrative remedies. Those decisions also recognize that, if no remedy is authorized by law and irreparable harm will result, judicial relief is available against public officials to prohibit them from acting in excess of, or without, jurisdiction, *Linde, supra, Ladd, supra*, or to compel them to perform an act that the law requires. *Tooley, supra; Barr, supra; Rynestad, supra; Viestenz, supra*.

*Medical Arts*, at 295–96.

[¶ 15] In *Braunagel v. City of Devils Lake*, 2001 ND 118, ¶ 1, 629 N.W.2d 567,

we reviewed an appeal from the dismissal of a landowner's action for injunctive relief to require a city to annex the landowner's property. We recognized the distinction between challenging the validity of the enactment of a zoning ordinance and challenging the correctness and propriety of a municipality's legislative decision whether to annex property. *Id.* at ¶¶ 8–14. We affirmed the dismissal of the plaintiff's claim for declaratory and injunctive relief, concluding he did not allege the city failed to comply with statutory procedures for annexation but challenged the wisdom and propriety of the city's decision to reject his petition for annexation. *Id.* at ¶¶ 13–14.

[¶ 16] This Court has recognized a decision denying the extension of a special use permit is a legislative decision subject to judicial review to determine whether or not the decision is arbitrary, capricious, or unreasonable. *Shaw v. Burleigh Cty.*, 286 N.W.2d 792, 793, 797 (N.D.1979). *See, e.g., Dockter v. Burleigh Cty. Bd. of Cty. Comm'rs*, 2015 ND 183, ¶ 8, 865 N.W.2d 836 (stating zoning decision is legislative function subject to limited judicial review). Williston, through its City Commission, has authority to make zoning decisions for the welfare of the community. *See* N.D.C.C. §§ 40–05–01 and 40–47–01. We have recognized a district court has jurisdiction to hear an appeal from a city commission decision under N.D.C.C. §§ 27–05–06 and 28–34–01. *Tibert v. City of Minto*, 2006 ND 189, ¶ 6, 720 N.W.2d 921. A statutory appeal is an adequate legal remedy to challenge a political subdivision decision, and an action for injunctive relief is not an appropriate substitute. *See Medical Arts*, 531 N.W.2d at 296; *Olson*, 253 N.W.2d at 182.

[¶ 17] Black Gold's argument on this issue does not challenge the validity of the enactment of any zoning ordinance, Williston's authority to consider the exten-

sion of the special use permit, or a claimed failure to perform an act the law requires. Rather, Black Gold argues it has a substantial probability of succeeding on the merits of its underlying lawsuit because there was no rational reason to close the housing facility. Black Gold's argument addresses the wisdom and propriety of Williston's legislative decision, and Black Gold has not demonstrated how an appeal to the district court is not an adequate legal remedy to resolve this claim. We conclude Black Gold's argument on this issue raises issues about the wisdom and propriety of Williston's legislative decision, which are inappropriate for injunctive relief, and the district court did not abuse its discretion in denying a preliminary injunction on that issue.

B

[¶ 18] Black Gold argues it has a substantial probability of succeeding on the merits of its lawsuit because Williston's decision violates Black Gold's due process rights. Black Gold claims Williston's decision violates due process because Commissioner Cymbaluk's participation in the decision established bias, or the appearance of bias, and resulted in an unfair decision.

[¶ 19] "An argument implicating a due process issue presents a question of law, which is fully reviewable on appeal." *Kilber v. Grand Forks Pub. Sch. Dist.*, 2012 ND 157, ¶ 11, 820 N.W.2d 96. A litigant has a due process right to a fair and unbiased decision maker. *Mattheis v. City of Hazen*, 421 N.W.2d 476, 479–80 (N.D.1988). However, this Court has said an administrative proceeding is not invalidated by a potentially disqualified board member's non-determinative vote. *See Dahm v. Stark Cty. Bd. of Cty. Comm'rs*, 2013 ND 241, ¶ 32, 841 N.W.2d 416; *Klindt v. Pembina Cty. Water Res. Bd.*, 2005 ND 106, ¶ 30, 697 N.W.2d 339. Addi-

tionally, N.D.C.C. § 44–04–22, describes a statutory standard for assessing potential disqualifications of city commissioners and provides:

> A person acting in a legislative or quasi-legislative or judicial or quasi-judicial capacity for a political subdivision of the state who has a direct and substantial personal or pecuniary interest in a matter before that board, council, commission, or other body, must disclose the fact to the body of which that person is a member, and may not participate in or vote on that particular matter without the consent of a majority of the rest of the body.

[¶ 20] The plain language of N.D.C.C. § 44–04–22 requires a city commissioner with a "direct and substantial personal or pecuniary interest in a matter" before a city commission to disclose the fact to the commission and precludes a commissioner with such an interest from participating in or voting on the matter without the consent of a majority of the commission.

[¶ 21] Attorney general opinions guide public officials until superseded by judicial opinion, and although not binding on this Court, attorney general opinions are entitled to respect and we will follow them if they are persuasive. *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 47, 598 N.W.2d 820. The attorney general has issued an opinion considering the application of N.D.C.C. § 44–04–22 in the context of a county commission vote on road improvements, a county commissioner who was a real estate agent, and that commissioner's perceived conflict of interest in the potential for increased sales commissions from the sale of relatives' land adjacent to the improved road. N.D. Att'y Gen. Op. 2007–L–12 (July 20, 2007). The attorney general concluded that N.D.C.C. § 44–04–22 only applies to personal or pecuniary interests that are direct

and substantial and that whether a conflict arises under the statute is usually determined by the involved official with the assistance of the attorney for the political subdivision, or if not resolved, then by the governing body of the political subdivision. N.D. Att'y Gen. Op. 2007–L–12, 1, 6. The attorney general applied the plain meaning of the relevant statutory terms to define them:

> Direct means "operating by an immediate connection or relation, instead of operating through a medium." Black's Law Dictionary 459 (6th ed.1990). "A direct interest, such as would render the interested party incompetent to testify in regard to the matter, is an interest which is certain, and not contingent or doubtful." *Id.* at 460. Substantial means "[o]f real worth and importance; of considerable value; . . . something worthwhile as distinguished from something without value or merely nominal." *Id.* at 1428, citing *Seglem v. Skelly Oil Co.* [145 Kan. 216], 65 P.2d 553, 554 (Kan.1937); *see also Miller v. Commissioner of Internal Revenue*, 84 F.2d 415, 418 (6th Cir.1936) ("In the commonly accepted legal sense, a substantial interest is something more than a merely nominal interest. . . ."); *Yetman v. Naumann* [16 Ariz.App. 314], 492 P.2d 1252, 1255 (Ariz.Ct.Ap.[App.]1972) ("substantial interest" defined in statute as any interest other than a "remote interest"). Personal means "[a]ppertaining to the person; belonging to an individual; limited to the person." Black's Law Dictionary at 1143. A pecuniary interest is "[a] direct interest related to money in an action or case." *Id.* at 1131. It is my opinion that the terms "direct," "substantial," "personal," and "pecuniary," as used in N.D.C.C. § 44–04–22, have the meanings indicated above.

N.D. Att'y Gen. Op. 2007–L–12, 3–4 (quoting N.D. Atty. Gen. 2002–L–54).

[¶ 22] Under the facts presented in that case, the attorney general concluded that N.D.C.C. § 44–04–22 was not applicable because the commissioner's perceived conflict was not a direct and substantial personal or pecuniary interest and that the commissioner, who was present at the meeting, had a duty to vote on the road improvements. N.D. Att'y Gen. Op. 2007–L–12, 6 (citing *Northwestern Bell Tel. Co. v. Board of Comm'rs*, 211 N.W.2d 399, 403 (N.D.1973) for principle that unless applicable statute requires abstention, commissioner who is present at a meeting has a duty to vote). We conclude the attorney general's opinion is consistent with the plain language of N.D.C.C. § 44–04–22 and due process and provides persuasive authority for the proposition that a direct and substantial pecuniary or personal interest is necessary to invoke the procedure for potential disqualification of a city commissioner from acting on city commission business.

[¶ 23] In support of the motion to vacate the temporary restraining order, Williston submitted an affidavit of Commissioner Cymbaluk, stating, in part:

14. On January 13, 2015, the City Commission took action on Black Gold and ATCO workforce housing facilities extension of their temporary permit.

15. The City Commission *unanimously* voted to NOT extend their permit due to their failures to comply with the requirements laid by the City and Resolution # 13–127, in particular their failure to install a fire sprinkler system on or before December 31, 2014.

16. On January 15, 2015, two days after the City Commission took action on Black Gold's temporary housing permit extension, I was contacted by Chris, a representative of Calfrac Well Services, Corp., regarding the action the City took on January 13, 2015.

17. I was originally not available when the representative contacted me by phone, so I returned the phone call shortly after he left a message requesting I return his call.

18. When I spoke with Calfrac's representative I relayed only the information that [was] already available to the public regarding the City Commission's decision not to extend Black Gold's temporary housing permit. This information was not only public, as the January 13, 2015, City Commission meeting was open to the public, but the Williston Herald also published an article on the City Commission's action regarding Black Gold's facility on January 14, 2015.

19. Further, Black Gold has attempted to assert I have a financial incentive to contact Black Gold's customers since I am a licensed real estate broker in Williston, North Dakota, as tenants of Black Gold would move into apartments or homes managed by Basin Brokers.

20. I have no interest, individually or otherwise, in any residential apartments.

21. As a shareholder of Basin Brokers, Inc., Basin Brokers does not and has not managed any residential apartments, or otherwise.

22. The only residential management Basin Brokers has undertaken and is undertaking is a single family condominium ... and the reason why Basin Brokers agreed to undertake the management of this property is a real estate agent for

Basin Brokers listed the property and it failed to sell by the fall of 2013. The owner of the property asked if Basin Brokers could lease it on her behalf as she did not want it to lie vacant during the winter and Basin Brokers agreed to do so. The term of the lease is for November 1, 2013 until May 30, 2015.

[¶ 24] Black Gold argues that based "[o]n information and belief," Cymbaluk had a direct financial incentive to close the Lodge. Other than conclusory assertions, however, Black Gold did not present any evidence contradicting Cymbaluk's affidavit to indicate he had any direct and substantial pecuniary or financial interest in closing the Lodge. Black Gold's conclusory assertions are insufficient to establish a due process or statutory violation. We conclude the district court did not abuse its discretion in denying a preliminary injunction on that issue.

## C

[¶ 25] Black Gold argues it has a substantial probability of succeeding on the merits of its lawsuit because Williston's decision violates its zoning ordinances. Black Gold claims those ordinances require Williston's building official to give notice of a violation and three days to correct the violation and only the building official may enforce zoning ordinances. Black Gold claims it was entitled to a writ of prohibition because Williston acted beyond the authority granted in its zoning ordinances.

[¶ 26] Black Gold does not argue Williston failed to properly enact any zoning ordinances. *See Braunagel*, 2001 ND 118, ¶¶ 8–14, 629 N.W.2d 567 (noting distinction between declaratory claim challenging validity of enactment of ordinance and appeal challenging correctness and propriety of legislative decision whether to annex land). The decision to extend or deny extension of a special use permit is a legislative function. *Shaw*, 286 N.W.2d at 797. Here, Williston's actions were not for enforcement of an existing zoning ordinance. Rather, Williston voted not to take further action to extend Black Gold's permit. To the extent Black Gold argues Williston lacked authority to make that legislative decision because it failed to comply with its zoning ordinances, we reject that argument. We conclude the district court did not abuse its discretion in denying a preliminary injunction on that issue.

## D

[¶ 27] We conclude that Black Gold failed to establish a substantial probability of succeeding on the merits of its underlying lawsuit against Williston and the City Commission and that the district court did not abuse its discretion in denying Black Gold's request for a preliminary injunction. Because we conclude Black Gold failed to establish a substantial probability of succeeding on the merits of its lawsuit, we need not address the other factors for granting or denying a preliminary injunction.

## IV

[¶ 28] We deny the request for a supervisory writ.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.