# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 50

Drew H. Wrigley, in his official capacity as
Attorney General for the State of North
Dakota,                                                                        Petitioner

      v.

The Honorable Bruce A. Romanick, Judge of
the District Court, South Central Judicial
District; Access Independent Health Services, Inc.,
d/b/a Red River Women's Clinic, on behalf
of itself and its patients, and Kathryn L.
Eggleston, M.D., on behalf of herself and her
patients; and Birch P. Burdick, in his official
capacity as the State's Attorney for Cass
County,                                                                        Respondents

## No. 20220260

Petition for Supervisory Writ.

REVIEW GRANTED AND RELIEF DENIED.

Opinion of the Court by Jensen, Chief Justice, in which Justices Crothers, McEvers, and District Judge Narum joined. Justice Tufte filed a concurring opinion. Justice McEvers filed an opinion concurring specially, in which Justice Crothers and District Judge Narum joined.

Matthew A. Sagsveen (argued), Solicitor General, and Courtney R. Titus (appeared), Assistant Attorney General, Bismarck, ND, for petitioner.

Meetra Mehdizadeh (argued), Luna Barrington (on brief), Lauren Bernstein (on brief), Melissa Rutman (on brief), Colin McGrath (on brief), Naz Akyol (on brief), Alexandra Blankman (on brief), Cassandra D'Alesandro (on brief), Liz Grefrath (on brief), and Lauren Kelly (on brief), New York, NY, and Christina A. Sambor (appeared), Bismarck, ND, for respondents Access Independent Health Services, Inc., d/b/a Red River Women's Clinic, on behalf of itself and its patients, and Kathryn L. Eggleston, M.D., on behalf of herself and her patients.

Christopher T. Dodson, Bismarck, ND, and Paul B. Linton, Northbrook, IL, for amicus curiae North Dakota Catholic Conference.

Elizabeth A. Elsberry and Christopher E. Rausch, Bismarck, ND, and Jocelyn Keider, Boston, MA, and Molly A. Meegan and Kimberly A. Parker, Washington, DC, for amicus curiae American College of Obstetricians and Gynecologists, American Medical Association, and Society for Maternal-Fetal Medicine.

**Jensen, Chief Justice.**

[¶1]   North Dakota Attorney General Drew Wrigley, on behalf of the State of North Dakota ("the State"), seeks a supervisory writ to vacate the district court's order granting a preliminary injunction enjoining enforcement of N.D.C.C. § 12.1-31-12. The injunction was granted in *Access Indep. Health Servs., Inc., et al. v. Drew H. Wrigley, et al.*, Burleigh Co. Court No. 2022-CV-01608. The State argues the district court abused its discretion in granting the injunction because Access Independent Health Services, Inc., d/b/a Red River Women's Clinic ("RRWC") and the other plaintiffs failed to prove (1) they have a substantial likelihood of success on the merits, (2) they will suffer irreparable injury, (3) there will be harm to other interested parties, and (4) the effect on the public interest weighs in favor of granting a preliminary injunction. While the regulation of abortion is within the authority of the legislature under the North Dakota Constitution, RRWC has demonstrated likely success on the merits that there is a fundamental right to an abortion in the limited instances of life-saving and health-preserving circumstances, and the statute is not narrowly tailored to satisfy strict scrutiny. We grant the requested review, deny the relief requested in the petition, and leave in place the order granting a preliminary injunction.

I

[¶2]   RRWC filed a motion for a temporary restraining order and preliminary injunction, seeking to enjoin enforcement of N.D.C.C. § 12.1-31-12 which reads as follows:

1.    As used in this section:
    a.    "Abortion" means the use or prescription of any substance, device, instrument, medicine, or drug to intentionally terminate the pregnancy of an individual known to be pregnant. The term does not include an act made with the intent to increase the probability of a live birth; preserve the life or health of a child after

1

live birth; or remove a dead, unborn child who died as a result of a spontaneous miscarriage, an accidental trauma, or a criminal assault upon the pregnant female or her unborn child.

    b.    "Physician" means an individual licensed to practice medicine under chapter 43-17.

    c.    "Professional judgment" means a medical judgment that would be made by a reasonably prudent physician who is knowledgeable about the case and the treatment possibilities with respect to the medical conditions involved.

2. It is a class C felony for a person, other than the pregnant female upon whom the abortion was performed, to perform an abortion.

3. The following are affirmative defenses under this section:

    a.    That the abortion was necessary in professional judgment and was intended to prevent the death of the pregnant female.

    b.    That the abortion was to terminate a pregnancy that resulted from gross sexual imposition, sexual imposition, sexual abuse of a ward, or incest, as those offenses are defined in chapter 12.1-20.

    c.    That the individual was acting within the scope of that individual's regulated profession and under the direction of or at the direction of a physician.

[¶3] The district court granted the motion for a temporary restraining order and preliminary injunction. The State requested this Court exercise supervisory jurisdiction to grant a writ, requiring the district court vacate the preliminary injunction asserting, in part, that the district court had failed to determine whether RRWC had a substantial likelihood of success on the merits of its claim, a prerequisite to granting a preliminary injunction. This Court granted the State's request in part, directing the district court to determine RRWC's substantial likelihood of success on the merits of its cause of action and thereafter reconsider whether a preliminary injunction was appropriate.

[¶4] The district court conducted further analysis on whether RRWC had a substantial likelihood of success on the merits and held RRWC had a substantial likelihood of prevailing in the litigation. The court concluded that

continuation of the preliminary injunction was necessary. This Court now considers the State's request for a supervisory writ to vacate the preliminary injunction.

## II

[¶5] RRWC argues this Court should decline to exercise its supervisory jurisdiction because this issue is not the sort of "extraordinary case" where the Court's intervention is necessary. This Court's authority to issue a supervisory writ is "purely discretionary." *State, ex rel. Harris v. Lee*, 2010 ND 88, ¶ 6, 782 N.W.2d 626 (quoting *State v. Paulson*, 2001 ND 82, ¶ 6, 625 N.W.2d 528). This Court will "determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case." *Id*. "Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented." *Id*. It is entirely within this Court's discretion to address the issues raised or to decline to address the issues.

[¶6] Section 12.1-31-12, N.D.C.C., was enacted in 2007. The enactment of the statute included recognition of existing United States Supreme Court precedents limiting the authority of states to regulate abortion. The effective date of the statute was tied to the issuance of a judgment by the United States Supreme Court restoring to the states the authority to regulate abortion.

[¶7] On June 24, 2022, the United States Supreme Court issued its decision in *Dobbs v. Jackson Women's Health Organization* holding that the federal constitution does not protect a woman's right to abortion. 142 S.Ct. 2228 (2022). The Supreme Court explicitly overruled *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and expressly restored to the states the authority to regulate abortion. *Dobbs*, 142 S.Ct. at 2279. The Supreme Court reasoned "[i]t is time to heed the Constitution and return the issue of abortion to the people's elected representatives." *Id*. at 2243. And, "[t]he permissibility of abortion, and the limitations, upon it, are to be resolved like most important questions in our democracy: by citizens trying to persuade one another and then voting." *Id*.

(quoting *Casey*, 505 U.S. at 979 (Scalia, J., concurring in judgment in part and dissenting in part)).

[¶8]   This petition presents an unusual situation well within the range of our past decisions exercising original jurisdiction to "rectify errors and prevent injustice in extraordinary cases[.]" *Harris*, 2010 ND 88, ¶ 6. An order granting a preliminary injunction is by definition "extraordinary." *Black Gold OilField Servs., LLC v. City of Williston*, 2016 ND 30, ¶ 12, 875 N.W.2d 515; *Vorachek v. Citizens State Bank*, 461 N.W.2d 580, 585 (N.D. 1990).

[¶9]   On another occasion, we exercised our original jurisdiction to consider an interim district court order restraining and enjoining during the pendency of the action the governor and other state officials from acting pursuant to certain statutes relating to the Bank of North Dakota. *State ex rel. Lemke v. Dist. Ct. of Stutsman Cnty.*, 186 N.W. 381 (1921). The Attorney General petitioned this Court for relief in the form of an appropriate writ. *Id.* at 382. The Court vacated the district court's restraining order pending review of the trial court action in issuing the restraining order. *Id.* at 383. We said:

> We do not find it necessary to refer to the matters set forth in the return filed by the district judge, for in our view of the case it is controlled by certain legal principles applicable to undisputed facts, or facts of which we must take judicial notice. In other words, we deem the questions arising in this case to be merely questions of law.

*Id.* We exercised our supervisory jurisdiction and issued "a writ directing the district court, and the judge thereof, to set aside the restraining order issued at the commencement of the action." *Id.* at 388.

[¶10] In another case, this Court exercised its original jurisdiction to restrain a district court from issuing a preliminary injunction. *State ex rel. Dorgan v. Fisk*, 107 N.W. 191 (N.D. 1906). The board of drain commissioners of Grand Forks County had advertised for bids for construction of a drain. *Id.* at 191. Objecting landowners filed suit and procured an order to show cause why a preliminary injunction should not be issued enjoining the defendant from further proceedings regarding the drain. *Id.* The Board appeared at the

4

scheduled hearing and objected, after which "the court stated that a preliminary injunction would be issued." *Id*. An interested landowner petitioned this Court for a writ "commanding [the district judge] to desist from further proceeding in the injunctional action." *Id*. Exercising our discretionary original jurisdiction to grant the writ and restrain the district court from issuing an injunction, we explained:

> The remedy by appeal would exist if the injunction be granted. The mere fact that an appeal would lie is not enough. It must be speedy and adequate. The granting of the writ to inferior courts is seldom a matter of absolute right as the remedy by appeal generally exists, and whether the appeal is speedy or adequate is a matter within the discretion of the appellate court, depending upon the particular facts of each case. The court cannot accurately determine when a trial in the case at bar would come on nor when the appeal would reach this court if an appeal were necessary. Inasmuch as the district court has exceeded its jurisdiction, a trial is unnecessary, and would be expensive and vexatious to each party; and that the result of a trial and appeal could not under the most favorable circumstances, be as speedy as a decision upon this original proceeding, we deem it a proper case for issuing a writ. The application for the writ is made to hasten a public improvement deemed to be of importance, at least to the petitioner and a large number of interested persons. There being a plain case of want of jurisdiction presented, and the appeal not being as speedy or adequate as this proceeding, we are satisfied that the petitioner is entitled to this summary and extraordinary remedy. We appreciate that this remedy should be cautiously granted. But, in view of the nature of the act that was enjoined, we have no doubt of the propriety and legality of assuming original jurisdiction.

*Id*. at 194.

[¶11] The issue presented by this petition is an issue of vital concern regarding a matter of important public interest. The extent to which a state legislature may regulate abortions has been the subject of multiple United States Supreme Court decisions, decisions of this Court, and the underlying action contends the legislature has exceeded its constitutional authority in regulating

5

abortion. We choose to exercise our discretion to review whether the district court abused its discretion issuing a preliminary injunction.

## III

[¶12] The State challenges each of the required elements for the granting of a preliminary injunction. We have noted the following regarding the elements necessary for a preliminary injunction:

> A trial court's discretion to grant or deny a preliminary injunction is based on the following factors: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest. *Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 24, 676 N.W.2d 752; *Vorachek v. Citizens State Bank*, 461 N.W.2d 580, 585 (N.D. 1990). The decision to grant or deny a preliminary injunction is within the discretion of a trial court, and its determination will not be disturbed on appeal absent an abuse of discretion. *Nodak Mut.*, 2004 ND 60, ¶ 24, 676 N.W.2d 752. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Id*.

*Eberts v. Billings Cnty. Bd. of Comm'rs*, 2005 ND 85, ¶ 8, 695 N.W.2d 691. "Generally, 'a preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Black Gold OilField*, 2016 ND 30, ¶ 12 (quoting *Vorachek*, at 585).

## IV

[¶13] RRWC argues it has a substantial likelihood of succeeding on the merits in the underlying lawsuit because there is a fundamental right to receive abortion care under the North Dakota Constitution. RRWC's complaint asserts the statute is unconstitutional and provides that RRWC is challenging the entirety of the statute, but also asserts challenges on behalf of various constituencies, including women seeking abortions and practicing physicians.

6

[¶14] An initial determination of whether there is a fundamental right to an abortion under the State Constitution is necessary because, if such a right exists within our Constitution, the statute is subject to strict scrutiny by this Court. *Hoff v. Berg*, 1999 ND 115, ¶ 13, 595 N.W.2d 285. In contrast, if we conclude there is no fundamental right to abortion, the statute is subject to a review by this Court as to whether the legislature had a rational basis for enactment. *Id*.

[¶15] RRWC argues sections 1 and 12 of article I of the North Dakota Constitution provide for a fundamental right to abortion. These sections read as follows:

> Section 1. All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness; and to keep and bear arms for the defense of their person, family, property, and the state, and for lawful hunting, recreational, and other lawful purposes, which shall not be infringed.

> . . . .

> Section 12. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

N.D. Const. art. I, §§ 1 and 12.

[¶16] RRWC argues the North Dakota Constitution should be interpreted expansively because the North Dakota Constitution "is a living, breathing, vital instrument, adaptable to the needs of the day, and was so intended by the people when adopted." *State v. Norton*, 255 N.W. 787, 792 (N.D. 1934). The State argues there is no constitutional right to an abortion under either section

7

of article I of the North Dakota Constitution, citing to *MKB Management Corp. v. Burdick*, 2014 ND 197, 855 N.W.2d 31 (VandeWalle, Chief Justice, concurring). The State contends the inherent rights recognized under sections 1 and 12, such as the fundamental right of parents to parent their child are distinguishable from abortion because abortion, unlike the right to parent one's own child, does not have longstanding roots in American culture.

[¶17] This Court uses the following framework when interpreting constitutional provisions:

> In interpreting constitutional provisions, we apply general principles of statutory construction. *Thompson v. Jaeger*, 2010 ND 174, ¶ 7, 788 N.W.2d 586. Our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional provision. *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 8, 601 N.W.2d 247. The intent and purpose of constitutional provisions are to be determined, if possible, from the language itself. *Thompson*, at ¶ 7. In construing constitutional provisions, we ascribe to the words the meaning the framers understood the provisions to have when adopted. *Kadrmas v. Dickinson Pub. Schs.*, 402 N.W.2d 897, 899 (N.D. 1987). We may consider contemporary legal practices and laws in effect when the people adopted the constitutional provisions. *See State v. Orr*, 375 N.W.2d 171, 177-78 (N.D. 1985) (interpreting right to counsel provision of state constitution in view of statutes in effect when constitution adopted); *City of Bismarck v. Altevogt*, 353 N.W.2d 760, 764-65 (N.D. 1984) (interpreting right to jury trial under state constitution in view of territorial statutes defining right to jury trial).

*MKB Mgmt. Corp.*, 2014 ND 197, ¶ 25. "[T]he North Dakota Constitution must be read in the light of history." *State v. Allesi*, 216 N.W.2d 805, 817 (N.D. 1974).

[¶18] Whether there is a fundamental right to abortion within the North Dakota Constitution was before this Court previously in *MKB Management Corp*. In *MKB Management Corp.*, this Court could not reach a sufficient majority to hold the underlying statute unconstitutional, the result RRWC is ultimately seeking in this case. *MKB Mgmt. Corp.*, 2014 ND 197, ¶ 1. *See* N.D. Const. art. VI, § 4 ("[This Court] shall not declare a legislative enactment

8

unconstitutional unless at least four of the members of the court so decide."). Additionally, this Court was unable to determine whether there is a fundamental right to an abortion under the North Dakota Constitution. *MKB Mgmt. Corp.*, at ¶ 1 (VandeWalle, C.J., concurred, at ¶ 38 finding "our state constitutional provisions were not intended to encompass a fundamental right to abortion[.]"); (Kapsner, J., and Maring, J., writing separately, at ¶ 97 concluding "a fundamental right to choose abortion before viability exists under a woman's liberty interest in article [I], section 1 of the North Dakota constitution and that interest is protected under article [I], section 12."); (Crothers, J., concurred, at ¶ 157 finding this case should not be decided under the North Dakota Constitution); (Sandstrom, J., concurred, at ¶ 170 stating "[t]he Chief Justice persuasively argues there is no separate state constitutional right to an abortion.").

[¶19] Several states have found their state constitutions provide for a fundamental right to abortion. The Minnesota Supreme Court recognized a fundamental right to abortion under a combination of sections and rights in the Minnesota Constitution. *Women of State of Minn. by Doe v. Gomez*, 542 N.W.2d 17, 19 (Minn. 1995). The California Supreme Court found a fundamental right to abortion under California's constitutional privacy clause. *Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 66 Cal.Rptr.2d 210, 940 P.2d 797, 819 (1997). The Alaska Supreme Court found a fundamental right to abortion within the right to privacy in the Alaska Constitution. *Valley Hosp. Ass'n, Inc. v. Mat-Su Coal. for Choice*, 948 P.2d 963, 969 (Alaska 1997). The Montana Supreme Court found a fundamental right to an abortion under Montana's constitutional provision which explicitly guarantees its citizens the right of privacy. *Armstrong v. State*, 296 Mont. 361, 989 P.2d 364, 387 (1999). The New Jersey Supreme Court found a fundamental right to abortion within the "natural and unalienable rights" clause of the New Jersey Constitution. *Planned Parenthood of Cent. N.J. v. Farmer*, 165 N.J. 609, 762 A.2d 620, 629 (2000). The Kansas Supreme Court has concluded its state constitution provides abortion rights. *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 440 P.3d 461 (2019). Lastly, the Florida Supreme Court found a fundamental

9

right to abortion within Florida's constitutional right to privacy. *Gainesville Woman Care, LLC v. State*, 210 So.3d 1243, 1252 (Fla. 2017).

[¶20] For the reasons set out below, we conclude RRWC has a substantial likelihood in establishing there is a fundamental right for a woman to obtain an abortion in instances where it is necessary to preserve her life or health. We need go no further here to determine whether there are fundamental rights broader in scope.

[¶21] "Our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement." *State v. Hagerty*, 1998 ND 122, ¶ 13, 580 N.W.2d 139 (quoting *Comm'n on Med. Competency v. Racek*, 527 N.W.2d 262, 266 (N.D. 1995)). To accomplish this we must construe the constitution in light of the contemporaneous history existing at and prior to the adoption of the constitutional provision. *City of West Fargo v. McAllister*, 2022 ND 94, ¶ 6, 974 N.W.2d 393.

[¶22] North Dakota Constitution article I, section 1 was enacted in 1889 when North Dakota was admitted as a state to the Union. Section 1 provides, in part, "[a]ll individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness[.]" N.D. Const. art. I, § 1. The North Dakota Constitution explicitly provides all citizens of North Dakota the right of enjoying and defending life and pursuing and obtaining safety. These rights implicitly include the right to obtain an abortion to preserve the woman's life or health.

[¶23] North Dakota's history and traditions support this conclusion. North Dakota has a long history of permitting women to obtain abortions to preserve their life or health. Prior to statehood, North Dakota, then part of the Dakota Territory, criminalized abortions but explicitly provided an abortion was not a criminal act if the treatment was done to preserve the life of the woman:

> Every person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such

10

woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the territorial prison not exceeding three years, or in a county jail not exceeding one year.

Compiled Laws of the Territory of Dakota, Penal Code, § 6538 (1887). The laws of the Dakota Territory read identically and provided the ability to receive a life-preserving abortion in 1877 and 1883.

[¶24] After statehood, North Dakota enacted a law which criminalized abortions but again explicitly provided an abortion would not be considered a criminal act if the treatment was done to preserve the life of the woman, which read:

Every person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such woman to take any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the penitentiary not less than one and not exceeding three years, or in a county jail not exceeding one year.

N.D. Rev. Code § 7177 (1895). North Dakota's legislature repeatedly reaffirmed the criminal prohibitions in substantially the same form and always with the same exception for abortions "necessary to preserve her life." N.D. Rev. Code § 7177 (1899); N.D. Rev. Code § 8912 (1905); N.D. Rev. Code § 9604 (1913); N.D. Rev. Code § 12-2501 (1943); N.D.C.C. § 12-25-01 (1959); N.D.C.C. § 12.1-19-01 (1973). North Dakota did not criminalize life-preserving abortions until N.D.C.C. § 12.1-31-12 was enacted in 2007 and became eligible for enforcement in 2022.

[¶25] Medical journals published shortly after statehood indicate it was common knowledge that an abortion could be performed to preserve the life or health of the woman.

11

> There are not infrequently cases in which an abortion is imperative: the mentally unfit who might become deranged; the woman with a narrow brim or outlet because of which her life might be in danger and a Cesar[e]an section is the only relief; the woman who may bleed to death; the eclamptic; and those suffering from dangerous diseases. This class, fortunately, is small in number; and abortion is performed only after a deliberate and careful consultation in which the dangers of the abortion are weighed from every side.

*Criminal Abortions*, 34 JOURNAL-LANCET 81, 82 (1914). Additionally, in the journal a doctor describes an abortion performed: "Mrs. T. first came under the writer's care for acute septic abortion. The uterus were emptied, and after a rather continued run of temperature the patient made a symptomatic recovery." A.C. Stokes, M.D., *Diseases of the Urinary Tract Produced by Diseases of the Genital Tract in the Female*, 34 JOURNAL-LANCET 593, 594 (1914). North Dakota recognized and approved abortions performed to preserve the life or health of the woman.

[¶26] The State asserts abortion cannot be included as a fundamental right, because the inherent rights reserved to the people under sections 1 and 12, such as the fundamental right of parents to parent their child, are distinguishable from abortion because abortion, unlike the right to parent one's own child, does not have longstanding roots in American culture. This assertion is incorrect, as noted above, North Dakota has a longstanding history of allowing pregnant women to receive an abortion to preserve her life or health. The legislature enacted and reaffirmed laws which always provided an exception to preserve the life of the woman up and until 2007 when N.D.C.C. § 12.1-31-12 was enacted as a trigger law. *See* N.D. Rev. Code § 7177 (1899); N.D. Rev. Code § 8912 (1905); N.D. Rev. Code § 9604 (1913); N.D. Rev. Code § 12-2501 (1943); N.D.C.C. § 12-25-01 (1959); N.D.C.C. § 12.1-19-01 (1973); N.D.C.C. § 14-02.1-04 (1975). Like the right to parent one's own child, the right to receive a health or life-preserving abortion is deeply rooted in North Dakota's history and culture.

12

[¶27] Fundamental rights are those which are deeply rooted in history and tradition and are implicit in the concept of ordered liberty. *State v. Baxter*, 2015 ND 107, ¶ 15, 863 N.W.2d 208. North Dakota's history and traditions, as well as the plain language of its Constitution, establish that the right of a woman to receive an abortion to preserve her life or health was implicit in North Dakota's concept of ordered liberty before, during, and at the time of statehood. After review of North Dakota's history and traditions, and the plain language of article I, section 1 of the North Dakota Constitution, it is clear the citizens of North Dakota have a right to enjoy and defend life and a right to pursue and obtain safety, which necessarily includes a pregnant woman has a fundamental right to obtain an abortion to preserve her life or her health.

V

[¶28] Because we hold the North Dakota Constitution provides a fundamental right to receive an abortion to preserve a pregnant woman's life or health, the constitutionality of N.D.C.C. § 12.1-31-12 must be analyzed under the strict scrutiny standard. A statute which restricts a fundamental right is subject to strict scrutiny standard of review which will only be justified if it furthers a compelling government interest and is narrowly tailored to serve that interest. *Hoff*, 1999 ND 115, ¶ 14.

[¶29] The State argues it has a compelling interest in protecting women's health and protecting unborn human life. RRWC does not challenge this assertion. We have previously held several interests compelling, including the State's interest in establishing minimum standards of education for children, interest in promoting grandparent visitation while protecting parents' right to parent their child, interest in highway safety, and an interest in regulating the practice of law within its boundaries. *Bismarck Pub. Sch. Dist. No. 1 v. State By and Through N.D. Legislative Assembly*, 511 N.W.2d 247, 259 (N.D. 1994); *Kulbacki v. Michael*, 2014 ND 83, ¶ 9, 845 N.W.2d 625; *Kobilanksy v. Liffrig*, 358 N.W.2d 781, 791 (N.D. 1984); *State v. Niska*, 380 N.W.2d 646, 650 (N.D. 1986). The State has a compelling interest in protecting women's health and protecting unborn human life, as these interests are at least of the same importance as compelling interests previously identified by this Court.

13

[¶30] Nevertheless, the State must still show N.D.C.C. § 12.1-31-12 is necessary to achieve the compelling state interests. While we note the legislature can regulate abortion, it must do so in a manner that is narrowly tailored to achieve the compelling interest. *Hoff*, 1999 ND 115, ¶ 13. On its face, N.D.C.C. § 12.1-31-12 unnecessarily restricts a woman's access to an abortion to preserve her life or health. Section 12.1-31-12, N.D.C.C., criminalizes abortions performed even if the abortion is to preserve the life or health of the woman. The statute requires a physician who performs a life-preserving abortion to face prosecution of a class C felony, and if prosecuted prove by a preponderance of the evidence the abortion was necessary to save the life of the woman. This is not narrowly tailored to achieve the State's interests in women's health and protecting unborn human life.

[¶31] Moreover, N.D.C.C. § 12.1-31-12 provides an affirmative defense only if in the professional judgment of the physician the abortion was necessary to prevent the death of the female. A pregnant woman is unable to obtain an abortion in order to preserve her health, regardless of the potential health consequences. Preserving the life or health of the woman necessarily includes providing an abortion when necessary to prevent severe, life altering damage. The United States District of Idaho explained the grave risks to health a pregnant woman faces:

> Pregnant women in Idaho routinely arrive at emergency rooms experiencing severe complications. The patient might be spiking a fever, experiencing uterine cramping and chills, contractions, shortness of breath, or significant vaginal bleeding. The ER physician may diagnose her with, among other possibilities, traumatic placental abruption, preeclampsia, or a preterm premature rupture of the membranes. In those situations, the physician may be called upon to make complex, difficult decisions in a fast-moving, chaotic environment. She may conclude that the only way to prevent serious harm to the patient or save her life is to terminate the pregnancy—a devastating result for the doctor and the patient.
>
> . . . .

14

Yet if the physician does not perform the abortion, the pregnant patient faces grave risks to her health—such as severe sepsis requiring limb amputation, uncontrollable uterine hemorrhage requiring hysterectomy, kidney failure requiring lifelong dialysis, hypoxic brain injury, or even death. And this woman, if she lives, potentially may have to live the remainder of her life with significant disabilities and chronic medical conditions as a result of her pregnancy complication. All because Idaho law prohibited the physician from performing the abortion.

Granted, the Idaho statute offers the physician the cold comfort of a narrow affirmative defense to avoid conviction. But only if she convinces a jury that, in her good faith medical judgment, performing the abortion was "necessary to prevent the death of the pregnant woman" can she possibly avoid conviction. Even then, there is no certainty a jury will acquit. And the physician cannot enjoy the benefit of this affirmative defense if she performed the abortion merely to prevent serious harm to the patient, rather than to save her life.

*United States v. Idaho*, 2022 WL 3692618, 1 (D. Idaho 2022). (Federal district court analyzing the Idaho statute under the Emergency Medical Treatment & Labor Act preemption.) A law that on its face criminalizes a life-preserving abortion, infringes unnecessarily on a woman's fundamental right to seek an abortion to preserve her life or health, at least in part, cannot withstand strict scrutiny.

[¶32] The State asserts N.D.C.C. § 12.1-31-12 is narrowly tailored because it provides a "narrow" definition of abortion. Section 12.1-31-12 defines abortion as follows:

"Abortion" means the use or prescription of any substance, device, instrument, medicine, or drug to intentionally terminate the pregnancy of an individual known to be pregnant. The term does not include an act made with the intent to increase the probability of a live birth; preserve the life or health of a child after live birth; or remove a dead, unborn child who died as a result of a spontaneous miscarriage, an accidental trauma, or a criminal assault upon the pregnant female or her unborn child.

15

N.D.C.C. § 12.1-31-12(1)(a). This definition is not narrowly tailored to women's health. Notably, the definition does not include abortions for ectopic pregnancies, which is a pregnancy where the fertilized egg "does not implant appropriately within the uterus" and is potentially lethal to the mother. 2 Am. Law Med. Malp. § 13:6 (2022). Therefore, under the statutory construction of N.D.C.C. § 12.1-31-12, an abortion to treat an ectopic pregnancy would be a criminal act. As noted above, criminalizing life-preserving abortions is not necessary to promote the State's interests in women's health and protecting unborn human life.

[¶33] In sum, the history and traditions of North Dakota support the conclusion that there is a fundamental right to receive an abortion to preserve the life or the health of the mother. Thus, in order to withstand constitutional scrutiny, N.D.C.C. § 12.1-31-12 must be necessary to promote a compelling interest. As described above, the statute is not narrowly tailored to promote women's health and protect unborn human life. Therefore, N.D.C.C. § 12.1-31-12 is unconstitutional, and RRWC has a substantial likelihood of succeeding on the merits at least with respect to life or health preserving abortions.

VI

[¶34] The second factor relevant to granting a preliminary injunction is the irreparable injury a party will suffer in the absence of a preliminary injunction.

> An injury is irreparable when it cannot be adequately compensated in damages, and it is not necessary that the pecuniary damage be shown to be great. * * * Acts which result in a serious change of, or are destructive to, the property affected either physically or in the character in which it has been held or enjoyed, * * * do an irreparable injury * * *. 43 C.J.S., Injunctions, § 23, pp. 446, 447, 448.

*Vorachek*, 461 N.W.2d at 585 (quotations omitted) (quoting *Viestenz v. Arthur Twp.*, 78 N.D. 1029, 54 N.W.2d 572, 578 (1952)).

[¶35] RRWC argued if N.D.C.C. § 12.1-31-12 is allowed to be enforced during the pendency of this litigation, irreparable damage will likely result from the

16

potentially life-saving or injury avoiding abortions that will not be performed at other healthcare facilities on an emergency basis. The irreparable injury to the state is the irreversible loss of unborn human life. The death of unborn children and the potential death or injury of a pregnant woman are both tragic. While we may have found this factor neutral, under an abuse of discretion standard we "will not reverse a district court's decision merely because it is not the one [we] would have made had it been [this Court] deciding the motion." *Anderson v. Baker*, 2015 ND 269, ¶ 7, 871 N.W.2d 830. The district court did not abuse its discretion in determining RRWC would suffer a greater irreparable injury than the State.

## VII

[¶36] The third factor relevant to granting a preliminary injunction is the harm to other interested parties. RRWC argued if N.D.C.C. § 12.1-31-12 is not enjoined, the women of North Dakota will face grave harm. The State argued the citizens of North Dakota will face grave harm if N.D.C.C. § 12.1-31-12 is enjoined, because the citizens of North Dakota have an interest in legislation being enforced. The district court found RRWC's arguments more persuasive, finding N.D.C.C. § 12.1-31-12 has been lying dormant for almost 15 years and the State failed to show how an additional delay would greatly harm any other interested parties. The district court did not abuse its discretion determining this factor weighed in RRWC's favor because the district court did not act in an arbitrary, unreasonable, or unconscionable manner in determining the lack of an injunction would cause harm to other interested parties.

## VIII

[¶37] The final factor relevant to granting a preliminary injunction is the effect on public interest. RRWC argued it is always in the public interest to protect constitutional rights and abortion has been legal in North Dakota for 50 years. The State argued that prior to *Roe* and *Casey*, North Dakota had a long standing history of prohibiting abortions. The district court noted both arguments were valid; however, the purpose of preliminary injunctions is to maintain the status quo during the pendency of litigation and at this time the

17

status quo in North Dakota is not to restrict or limit abortions in the manner provided for in N.D.C.C. § 12.1-31-12.

[¶38] "[T]he purpose of a temporary or preliminary injunction 'is to maintain the cause in status quo until a trial on the merits.'" *State v. Holecek*, 545 N.W.2d 800, 804 (N.D. 1996) (quoting *Gunsch v. Gunsch*, 69 N.W.2d 739, 745 (N.D. 1954)). *Roe v. Wade*, which found a constitutional right to an abortion within the United States Constitution was decided in 1973. 410 U.S. 113 (1973). From 1973 until June 2022 the right to obtain an abortion, with some restrictions, has been present nationwide and in North Dakota. After the *Dobbs* decision overturned *Roe*, N.D.C.C. § 12.1-31-12 was not triggered before the district court ordered the injunction. Therefore, the status quo in North Dakota for 49 years has been to allow for abortion care. The district court properly determined the status quo at this time is to generally allow abortion care and thus to maintain that status quo until a trial on the merits is held, N.D.C.C. § 12.1-31-12 should be temporarily enjoined from enforcement. The district court did not act in an arbitrary, unreasonable, or unconscionable manner in determining the effect of the public interest weighs in favor of granting a preliminary injunction.

## IX

[¶39] The district court did not abuse its discretion in determining RRWC has a substantial likelihood of succeeding on the merits, RRWC will suffer irreparable injury, failure to enjoin N.D.C.C. § 12.1-31-12 will cause harm to other interested parties, and it is in the public interest to enjoin enforcement of N.D.C.C. § 12.1-31-12. The district court did not abuse its discretion in granting the preliminary injunction.

## X

[¶40] The North Dakota Constitution guarantees North Dakota citizens the right to enjoy and defend life and the right to pursue and obtain safety, which necessarily includes a pregnant woman has a fundamental right to obtain an abortion to preserve her life or her health. Thus, strict scrutiny analysis applies, and RRWC has a substantial likelihood of demonstrating N.D.C.C. §

18

12.1-31-12 is not narrowly tailored to achieve a compelling government interest, at least in the limited instances of life-saving and health-preserving circumstances. The district court did not abuse its discretion in granting the preliminary injunction. We deny the requested relief and leave the preliminary injunction in place.

[¶41] Jon J. Jensen, C.J.
  Daniel J. Crothers
  Lisa Fair McEvers
  Daniel D. Narum, D.J.

**Tufte, Justice, concurring.**

[¶42] I agree with the majority opinion, with the understanding that to reach the result here, "life or health" need not be understood more broadly than its application to the right of self-defense. Section 12.1-31-12, N.D.C.C., provides only an affirmative defense and not an exception for abortion intended to save a pregnant woman's life. For that reason, there is a substantial probability it is unconstitutional in violation of the right of self-defense protected by N.D. Const. art. I, § 1. At this time we consider only the preliminary injunction, and we need not decide the constitutionally necessary scope of any health exception.

[¶43] The North Dakota Constitution guarantees the "inalienable right[ ] ... of enjoying and defending life and liberty." N.D. Const. art. I, § 1. Commonly, an individual exercises this right of self-defense by responding to a threat of imminent serious bodily injury or death with physical force. *City of Jamestown v. Kastet*, 2022 ND 40, ¶ 17, 970 N.W.2d 187; *State v. Olander*, 1998 ND 50, ¶ 20, 575 N.W.2d 658. Where a pregnancy raises a similar threat of serious bodily injury or death, the pregnant woman has a fundamental right to preserve her life and health with the aid of a physician. Our recognition of this fundamental right to preserve one's life does not depend on resolving the disputed point of pregnancy at which there are two lives that must be considered. The State has a compelling interest in protecting unborn human life, which RRWC does not dispute. Majority, at ¶ 29. We have long understood

19

that a woman has an inalienable right to employ deadly force against another person when necessary to protect herself against death or serious bodily injury. *State v. Leidholm*, 334 N.W.2d 811, 820 (N.D. 1983); *United States v. Leighton*, 3 Dakota 29, 13 N.W. 347, 348 (1882). Likewise, the State's compelling interest on behalf of an unborn child must yield to the pregnant woman's right to abort a pregnancy when necessary to preserve her life or health.

[¶44] If there is merely evidence sufficient to raise a reasonable doubt about a self-defense claim, a defendant is entitled to a jury instruction on self-defense and the State must prove the absence of self-defense as an element of the offense beyond a reasonable doubt. *Kastet*, 2022 ND 40, ¶ 17; *Olander*, 1998 ND 50, ¶ 20; *State v. Hazlett*, 113 N.W. 374, 378 (N.D. 1907). Where an abortion is performed in situations that fall within the constitutional right of self-defense, section 12.1-31-12, N.D.C.C., unconstitutionally places the evidentiary burden on the defendant to raise not merely a reasonable doubt, but to prove an affirmative defense by a preponderance of the evidence. To that extent, RRWC has demonstrated a substantial probability of success in demonstrating N.D.C.C. § 12.1-31-12 is unconstitutional in violation of N.D. Const. art. I, § 1.

[¶45] We do not decide here what scope of health risks may give rise to abortion as medical self-defense. In the district court, the parties will have opportunity to present historical evidence illuminating the meaning of Article I, § 1, and to further develop their legal arguments. Before *Roe v. Wade*, 410 U.S. 113 (1973), restrictive abortion laws in North Dakota and nationwide uniformly recognized exceptions for abortion intended to save the woman's life. *See* Eugene Volokh, *Medical Self-Defense, Prohibited Experimental Therapies, and Payment for Organs*, 120 Harv. L. Rev. 1813, 1825 (2007) ("[T]he abortion-as-self-defense right is largely uncontroversial, at least when threats to the mother's life, and not just to her psychological health, are involved: it was accepted even in Chief Justice Rehnquist's *Roe* dissent, [and] it was recognized by all the restrictive abortion laws in effect when *Roe* was decided.").

[¶46] There may or may not be sufficient historical evidence to support a broader self-defense or other fundamental right implicated by the state's

20

abortion regulations. That question is not resolved here. Today our decision is one of likely success on the merits necessary to support a preliminary injunction. Before final resolution of the claims, the parties may present historical evidence on the state constitution's original meaning, both when adopted in 1889 and when amended in 1984. The court also may receive further legal argument about the meaning of Article I, § 1, and any rights guaranteed by "necessary implication." *Black's Law Dictionary* 903 (11th ed. 2019); *see also* Henry Campbell Black, *A Dictionary of Law* 806 (1st ed. 1891) ("so strong a probability of intention that an intention contrary . . . cannot be supposed"). I agree with Justice McEvers that Cooley's treatise may well provide insight into what the people who drafted and adopted our declaration of fundamental rights meant by the words chosen and how they expected those words to be interpreted by the courts. Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 45-47, ch. IV & VII (5th ed. 1883). If the district court enters a permanent injunction, it may have to address questions of severability and consider any amendments to the statute enacted while this matter is pending. Also unresolved here is how the district court and this Court ultimately assess the narrow tailoring requirement where there are two compelling interests and it appears that the more narrowly tailored a statute is to protecting the life and health of pregnant women, the less narrowly tailored it is to the State's interest in protecting unborn life, and vice versa.

[¶47] Jerod E. Tufte

**McEvers, Justice, concurring specially.**

[¶48] I agree with the majority to exercise our discretion to review and deny the requested relief as set forth in the majority opinion, upholding the injunction on narrow grounds. I write separately to explain how and why the rights protected under the North Dakota Constitution may be broader than those protected under the United States Constitution.

[¶49] The historical perspective leading to adopting our state constitution is helpful to understand the difference between the state and federal

21

constitutions. The prominent late nineteenth century American legal scholar Thomas Cooley cautioned against mistaking a state constitution's recognition of a right as being the source of its creation:

> In considering State constitutions we must not commit the mistake of supposing that, because individual rights are guarded and protected by them, they must also be considered as owing their origin to them. These instruments measure the powers of the rulers, but they do not measure the rights of the governed.

Thomas M. Cooley, *A Treatise on the Constitutional Limitations which Rest upon the Legislative Power of the States of the American Union,* *36 (2d ed. 1871). Professor Cooley explained a constitution "grants no rights to the people," but instead is "[d]esigned for their protection in the enjoyment of the rights and powers which they possessed before the constitution was made." *Id.*

[¶50] Professor Cooley also described the difference between the Constitution of the United States and a state constitution:

> It is to be borne in mind, however, that there is a broad difference between the Constitution of the United States and the constitutions of States as regards the powers which may be exercised under them. The government of the United States is one of *enumerated* powers; the governments of the States are possessed of all general powers of legislation. When a law of Congress is assailed as void, we look in the national Constitution to see if the grant of specified powers is broad enough to embrace it; but when a State law is attacked on the same ground, it is presumably valid in any case, and this presumption is a conclusive one, unless in the Constitution of the United States or of the State we are able to discover that it is prohibited. We look in the Constitution of the United States for *grants* of legislative power, but in the constitution of the State to ascertain if any *limitations* have been imposed upon the complete power with which the legislative department of the State was vested in its creation. . . . That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without constitutional limitations, the

22

power to make law would be absolute. These limitations are created and imposed by express words, <u>or arise by necessary implication</u>. . . . The executive can do no legislative act, nor the legislature any executive act, and neither can exercise judicial authority.

It does not follow, however, that in every case the courts, before they set aside a law as invalid, must be able to find in the constitution some specific inhibition which has been disregarded, or some express command which has been disobeyed.

Cooley, *supra*, at *173-74 (italics in original; underlining added).

[¶51] Professor Cooley described certain rights as "fundamental," specifically noting "that all men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety and happiness." Cooley, *supra*, at *35. Likely, it is no coincidence that N.D. Const. art. I, § 1 identifies all of the natural and inalienable rights identified by Professor Cooley with the same language he used (except one word I discuss below). Professor Cooley addressed our constitutional drafters on July 17, 1889, in Bismarck. *See Official Report of the Proceedings and Debates of the First Constitutional Convention of North Dakota*, 65-67 (1889). He told them they were setting out "guiding landmarks" that will exist "probably for all time." *Id*. at 65. He cautioned them "that times change," and he advised them not to "legislate too much." *Id*. at 66-67. He said "[t]ake care to put proper restrictions" on the legislature, "but at the same time leave what properly belongs to the field of legislation" to future legislatures. *Id*. at 67.

[¶52] Before he spoke to the constitutional convention, Professor Cooley wrote in *Constitutional Limitations* it "is the peculiar province of the judicial department," as opposed to the legislature, "to adjudicate upon, and protect, the rights and interests of individual citizens, and to that end to construe and apply the laws." Cooley, *supra*, at *90. Shortly before the constitutional convention, the United States Supreme Court also discussed the duty of the

23

judiciary in *Boyd v. United States*, 116 U.S. 616, 635 (1886), explaining courts must be "watchful for the constitutional rights of the citizen, and against any stealthy encroachment thereon." Courts, it explained, must liberally construe provisions protecting fundamental rights:

> [C]onstitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance.

*Id.* Based on this legal precedent, we can assume the drafters understood courts would construe broadly descriptions protecting life, liberty, and security of a person liberally. They nonetheless chose at the outset to enshrine broad guarantees of freedom in N.D. Const. art. I, § 1.

[¶53] Although the drafters of our constitution adopted the words Professor Cooley used, one has since changed. On November 6, 1984, the people of this State approved an initiated measure that changed the word "men" in N.D. Const. art. I, § 1 to the word "individuals." *See MKB Mgmt. Corp. v. Burdick*, 2014 ND 197, ¶¶ 88-89, 855 N.W.2d 31 (opinion of Kapsner, J.) (discussing the amendment). The people clarified in writing what the drafters omitted—that women are born with the same natural and inalienable rights as men. N.D. Const. art. I, § 1.

[¶54] We view the question before us through this lens. Our reading of the Constitution requires a recognition that the drafters did not set out to delineate in Article I, § 1 the specific rights it protects and to exclude others. Rather, the limitations placed on the legislature in Article I, § 1 arise by necessary implication. By its nature, the Constitution was meant to "define the limits" of the State's exercise of power "so as to protect individual rights, and shield them against the assumption of arbitrary power." Cooley, *supra*, at *3. The rights mentioned in Article I, § 1 are "among" those "certain inalienable rights" that "all individuals" possess "by nature." *Id.* For example, the Constitution does not specifically identify a number of fundamental rights, and yet this Court has recognized the same. *See Hoff v. Berg,* 1999 ND 115, ¶¶ 8-18, 595 N.W.2d

24

285 (stating parents have a fundamental right to parent their children); *State ex rel. Schuetzle v. Vogel,* 537 N.W.2d 358, 360-64 (N.D. 1995) (recognizing liberty interest to refuse unwanted medical treatment); *Johnson v. Elkin,* 263 N.W.2d 123, 129-30 (N.D. 1978) (identifying liberty right to engage in ordinary occupation without state regulation).

[¶55] While I agree, and have signed with the majority, I write separately to recognize analysis of the state constitution will not always parallel analysis of the federal constitution. *See State v. Kordonowy*, 2015 ND 197, ¶ 14, 867 N.W.2d 690 ("A state may grant greater protections than the United States Constitution through its own constitution"); *see also Riemers v. Eslinger*, 2010 ND 76, ¶ 18, 781 N.W.2d 632 (same); *State v. Nordquist*, 309 N.W.2d 109, 113 (N.D. 1981) (same); *State v. Matthews*, 216 N.W.2d 90, 99 (N.D. 1974) (same). In addition, while we have only narrowly considered the fundamental right to an abortion "at least in the limited instances of life-saving and health preserving circumstances," Majority, at ¶ 40, the district court is free to consider whether additional fundamental rights are implicated by the statute under N.D. Const. art. I, § 1, or any other constitutional provision. For example, while the parties have not addressed N.D. Const. art. I, § 25, which provides comprehensive constitutional rights for victims of crimes, the rights found therein may be implicated nonetheless by N.D.C.C. § 12.1-31-12.

[¶56] Daniel J. Crothers
    Lisa Fair McEvers
    Daniel D. Narum, D.J.

[¶57] Justice Gerald W. VandeWalle was not a member of the Court when this opinion was considered and did not participate in the decision. The Honorable Daniel D. Narum, D.J., sitting in place of Bahr, J., disqualified.