# Supreme Court of Texas

No. 23-0629

State of Texas; Ken Paxton, in his official capacity as Attorney
General of Texas; Texas Medical Board; and Stephen Brint
Carlton, in his official capacity as Executive Director of the Texas
Medical Board,

*Appellants*,

v.

Amanda Zurawski; Lauren Miller; Lauren Hall; Anna Zargarian;
Ashley Brandt; Kylie Beaton; Jessica Bernardo; Samantha
Casiano; Austin Dennard, D.O.; Taylor Edwards; Kiersten
Hogan; Lauren Van Vleet; Elizabeth Weller; Damla Karsan,
M.D., on behalf of herself and her patients; and Judy Levison,
M.D., M.P.H., on behalf of herself and her patients,

*Appellees*

On Direct Appeal from the
353rd District Court, Travis County, Texas

JUSTICE LEHRMANN, concurring.

In the wake of the United States Supreme Court's decision to
overturn *Roe v. Wade*, the Texas Legislature has enacted one of the most
restrictive abortion bans in the country. And whatever my personal
views may be about how restrictive abortion statutes in Texas "should"

be, it is the Legislature's prerogative to make that determination. *Cf. Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 137 (Tex. 2018) (noting that in construing statutes, courts should avoid "usurping the legislature's role of deciding what the law should be"). However, notwithstanding the shifting legal landscape in this area, the Legislature's authority is not without limits. Certainly, a woman's right to a life-saving abortion is one such limit. But it is not the only limit—at least not in Texas. I join the Court's opinion today because it explains that a physician need not wait until her patient is on the verge of death to perform either a life-saving abortion or one that would prevent serious physical impairment. Indeed, we reiterate that imminence is not required. *Ante* at 3, 25; *In re State*, 682 S.W.3d 890, 894 (Tex. 2023). We also make clear that one other physician's opinion that the performing doctor used "reasonable medical judgment" is sufficient corroboration to support the performing doctor's action. *See ante* at 22. Hopefully, this will provide physicians with much-needed guidance about what the law requires. However, as Justice Busby explains in his concurrence, this does not mean that the statute is immune from further legal challenge. I write separately to explain why, in my view, the Court's interpretation allows the Texas Human Life Protection Act to withstand today's challenge and to note the limited nature of that challenge.

As an initial matter, I recognize that the plaintiffs' petition is replete with references to the Act's lack of clarity and to confusion among practitioners regarding the scope of the exception at issue, leading to "significant chilling [in] the provision of medically necessary abortion." Nevertheless, the plaintiffs affirmatively disclaim any

2

assertion that the statute is unconstitutionally "void for vagueness." *See Johnson v. United States*, 576 U.S. 591, 595 (2015) ("Our cases establish that the Government violates [due process] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (describing the "void-for-vagueness doctrine"). That is, we are not asked to determine whether the Act's lack of clarity, standing alone, caused it to violate the plaintiffs', or anyone else's, constitutional rights. Thus, the Court's opinion rightly does not address, and in turn does not foreclose, such a challenge. *See post* at 5–6 (Busby, J., concurring).

Further, we are not asked whether an abortion lawfully could—or should—have been provided to any of the patient-plaintiffs at any particular stage of their pregnancies, and none of the plaintiffs seek redress for past harms. Rather, the plaintiffs seek: (1) a declaration clarifying the scope of the Act's exception "consistent with the Texas Constitution"; (2) a judgment that enforcing the Act contrary to that declaration would be ultra vires; (3) a judgment that enforcing the Act contrary to that declaration would violate the Texas Constitution as applied to pregnant people and physicians; and (4) temporary and permanent relief enjoining the defendants from enforcing the Act in a manner contrary to the judgment. Given the severe criminal, civil, and occupational penalties associated with a violation of the Act, and Texas physicians' corresponding and justifiable concerns about complying with the Act while providing quality medical care, the plaintiffs' request for

3

clarity is understandable. *See* TEX. HEALTH & SAFETY CODE § 170A.004(b) ("An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if an unborn child dies as a result of the offense."); *id.* § 170A.005(b) (subjecting a person who violates the Act to "a civil penalty of not less than $100,000 for each violation"); *id.* § 170A.007 (requiring the revocation of the license of a health care professional who violates the Act).

As the case is presented to us, the Court's opinion provides what clarity it can. The Act permits an abortion when, in the physician's reasonable medical judgment, a woman has a life-threatening physical condition that places her at risk of death or serious physical impairment unless an abortion is performed. *Id.* § 170A.002(b). As the Court confirms, "the law does not require that a woman's death be imminent or that she first suffer physical impairment. Rather, Texas law permits a physician to address the risk that a life-threatening condition poses before a woman suffers the consequences of that risk." *Ante* at 3; *see also id.* at 25 (explaining that "the 'life-threatening physical condition' does not require a manifestation of that risk"). Nor does the law impose liability on a physician merely because not every doctor would have concluded that a life-saving abortion was warranted under the circumstances; rather, the State must "prove that *no* reasonable physician would have" reached that conclusion. *Id.* at 22. So construed, and only so construed, the Act survives the due-course challenge presented. However, an abortion ban any more restrictive or narrowly construed would, in my view, be inherently violative of both the United States Constitution and the Texas Constitution.

4

The Texas Constitution enumerates a citizen's right to life in the Texas Bill of Rights. TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."). This Court's early, post-ratification opinions uniformly read Article I, Section 19 to provide protection for substantive, as well as procedural, rights. *See Milliken v. Weatherford*, 54 Tex. 388, 394 (1881) (invalidating a city ordinance that violated Due Course Clause substantive liberty protections or "common rights").

Texas's Due Course Clause operates today as it did then. It serves as a constitutional safeguard against the State's infringement of citizens' fundamental rights—the most profound of which is a citizen's enumerated right to life. Where a fundamental right or suspect class is at issue, as here, state action must "be narrowly tailored to serve a compelling government interest." *Richards v. League of United Latin Am. Citizens*, 868 S.W.2d 306, 311 (Tex. 1993).[1]

As the Oklahoma and North Dakota Supreme Courts have already concluded based on analogous state constitutional provisions, a general abortion ban cannot survive constitutional scrutiny unless it excepts "the limited instances of life-saving and health-preserving

---

[1] The Act expressly, and as a matter of constitutional necessity, does not apply when a fetus has died in utero. TEX. HEALTH & SAFETY CODE § 245.002(1) (defining "abortion" to mean "the act of using or prescribing an instrument, a drug, a medicine, or any other substance, device, or means with the intent to cause the death of an unborn child of a woman known to be pregnant"); *id.* § 170A.001(3) (defining "pregnant" to mean "the female human reproductive condition of having a *living* unborn child within the female's body" (emphasis added)).

5

circumstances." *Wrigley v. Romanick*, 988 N.W.2d 231, 245 (N.D. 2023); *see also Okla. Call for Reprod. Just. v. Drummond*, 526 P.3d 1123, 1130 (Okla. 2023). Moreover, requiring a patient "to be in actual and present danger" or "to wait until there is a medical emergency would further endanger the life of the pregnant woman and does not serve a compelling state interest." *Drummond*, 526 P.3d at 1131. Texas's Constitution similarly "creates an inherent right of a pregnant woman to terminate a pregnancy when necessary to preserve her life." *See id.* at 1130.

Separately, the Fifth and Fourteenth Amendments to the United States Constitution provide citizens similar protection against state deprivation of life, liberty, or property without due process of law. The Due Process Clause protects both substantive rights guaranteed by the first eight Amendments and unenumerated fundamental rights that have "deep roots in our history and tradition" and are essential to our Nation's "scheme of ordered liberty." *Timbs v. Indiana*, 139 S. Ct. 682, 686–87 (2019) (citations omitted). A woman's right to access life-saving medical care without undue interference by the government is deeply rooted in our history and tradition, essential to our Nation's scheme of ordered liberty, and enshrined in the explicit language of the Fifth and Fourteenth Amendments. *See* U.S. CONST. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."); *id.* amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property without due process of law . . . .").

Indeed, it should go without saying that, although the U.S. Supreme Court has concluded that abortion is not a constitutional right, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 292 (2022), a

6

pregnant patient retains a liberty interest in access to medical care, including abortion, to protect her life and health. Several Supreme Court Justices have already articulated this point. *Id.* at 339 n.2 (Kavanaugh, J., concurring) (reiterating Justice Rehnquist's assertion in his dissent in *Roe v. Wade* that "an exception to a State's restriction on abortion would be constitutionally required when an abortion is necessary to save the life of the mother"); *see also Roe v. Wade*, 410 U.S. 113, 173 (1973) (Rehnquist, J., dissenting) ("If the Texas statute were to prohibit an abortion even where the mother's life is in jeopardy, I have little doubt that such a statute would lack a rational relation to a valid state objective . . . .").

Moreover, in jurisdictions where abortion was generally prohibited before *Roe v. Wade*, exceptions to preserve the mother's life represented a co-equal and indivisible feature of that legal history and tradition.[2] Texas's 1856 enactment of Texas Penal Code articles 536 to 541 serves as an example. Article 541, in particular, stated: "nothing contained in this chapter shall be deemed to apply to the case of an abortion procured or attempted to be procured by medical advice for the purpose of saving the life of the mother." TEX. PENAL CODE art. 541

---

[2] As laid out in Appendices A and B to the Supreme Court's opinion in *Dobbs*, almost every state and territory that banned or criminalized abortion before *Roe* included an explicit exception for the life of the mother. While a selective few of the early statutes did not contain an explicit exception, they required that the abortion be performed willfully and maliciously. *See, e.g.*, CONN. STAT. TIT. 20, § 14 (1821). Hence, the scienter requirement provided a means to justify an abortion performed to protect the life of the mother. *See* Stephen G. Gilles, *What Does* Dobbs *Mean for the Constitutional Right to a Life-or-Health-Preserving Abortion?*, 92 MISS. L.J. 271, 293 (2023) (citing language in *Dobbs*).

(1857). Texas law continued to permit abortions for that purpose in the century that followed. *See id.* arts. 641–46 (1879); *id.* arts. 1071–76 (1895); *id.* arts. 1191–96 (1911); TEX. REV. CIV. STAT. art. 4512.6 (1925). In accordance with that longstanding provision, in 1927 the Texas Court of Criminal Appeals held that a physician in Texas had "a right to produce an abortion . . . if his acts were directed towards saving the life of the mother of the child." *Ex parte Vick*, 292 S.W. 889, 890 (Tex. Crim. App. 1927).

This exception is not only a bedrock principle in Texas's legal tradition, but it also reflects a broad and longstanding national consensus. *See, e.g.*, *Commonwealth v. Sholes*, 95 Mass. (13 Allen) 554, 558 (1866) (concluding that an abortion "done by a surgeon for the purpose of saving the life of the woman" is among the "circumstances which would furnish a lawful justification"); 2 F. Wharton, CRIMINAL LAW § 1230, p. 206 (7th ed. 1874) ("Of course it is a defense that the destruction of the child's life was necessary to save that of the mother."). Simply put, the very same legal history and tradition relied upon in *Dobbs* to support states' authority to restrict abortion access simultaneously enshrines a woman's constitutional right to a life-preserving abortion.

It is undoubtedly the prerogative of the political branches to determine what abortion restrictions Texans will tolerate, within constitutional parameters. And it is not the judiciary's role to strike down laws that survive constitutional scrutiny, however narrowly. In this instance, the Legislature has enacted both a general rule and an exception to that rule which, in tandem, survive the constitutional

8

challenge the plaintiffs present. Critically, the exception ensures: (1) a pregnant patient can rely on her physician's reasonable medical judgment that an abortion is medically necessary to prevent her death or serious physical impairment—before she is in imminent danger of such consequences; and (2) a physician can exercise her reasonable medical judgment without fear that she will be prosecuted if the State unearths a physician who would have reached a different conclusion under the circumstances. Absent such parameters, the statute would fall short. *See Drummond*, 526 P.3d at 1131.

Although this area of law will inevitably require further development in the wake of *Dobbs*, it bears reiterating that the immediate duty to articulate more detailed standards and best practices consistent with "reasonable medical judgment" rests squarely on the medical community—not lawyers, judges, legislators, or anyone else lacking medical expertise. *See In re State*, 682 S.W.3d at 894–95. Physicians alone have the requisite education, training, and experience to articulate and exercise reasonable medical judgment in these life-and-death situations. Therefore, pursuant to our decision in this case, immediate and ongoing efforts to formulate applicable standards and best practices are essential to ensure that women in Texas receive the timely, quality medical care that they deserve and to which they are entitled. The further the medical community goes in undertaking this sensitive task now, the better equipped courts will be to objectively evaluate a physician's conduct in the future.

With these additional thoughts, I concur in the Court's judgment and join its opinion.

Debra H. Lehrmann
Justice

**OPINION FILED:** May 31, 2024